UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Caleb Gottfried,
Plaintiff,
v.
Night Media, Inc. and Kai Cenat LLC,
Defendants.

Civil Action No. 1:26-cv-05471 (LTS)

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Caleb Gottfried, appearing pro se, alleges as follows:

## I. NATURE OF THE ACTION

1. This action arises from injuries Plaintiff sustained on June 12, 2026 at an event organized, promoted, and controlled by Defendants in Manhattan, and from Defendants' subsequent use of Plaintiff's likeness in a commercial promotional video published and monetized without his written consent.

2. Plaintiff brings this action solely in his individual capacity. The injuries alleged are personal to him: physical injury sustained at the event, and the unauthorized use of his own portrait and likeness. Plaintiff seeks no relief on behalf of SNVRKOTICS LLC or any other entity. Plaintiff asserts no claim for trademark infringement and asserts no claim belonging to any person or entity other than himself.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in New York County, New York.

## III. PARTIES

5. Plaintiff Caleb Gottfried is a natural person and a citizen of the State of New Jersey.

6. Defendant Night Media, Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in Austin, Texas. It is a talent management and production company, and is a citizen of Texas.

7. Defendant Kai Cenat LLC is a limited liability company organized under the laws of the State of New York. For purposes of diversity jurisdiction, a limited liability company is a citizen of every State of which any of its members is a citizen. Upon information and belief, the members of Kai Cenat LLC are citizens of New York.

## IV. FACTUAL ALLEGATIONS

### *A. Defendants Organized and Controlled the Event*

8. "Streamer University" is a branded commercial venture created, promoted, and controlled by Defendants.

9. Kai Cenat has publicly stated of the venture on May 25, 2025: "We own the IP of Streamer University."

10. On June 12, 2026, Defendants held an in-person event at John Jay College of Criminal Justice in Manhattan, New York. Defendants marketed the event to prospective attendees as an in-person audition opportunity for "Streamer University."

11. Defendants organized, promoted, staffed, and directed the June 12, 2026 event. Defendants set the terms on which attendees would be admitted, supplied the forms attendees were required to complete, and directed the audition process. The event was held on premises owned by a third party, but the conditions giving rise to Plaintiff's injury were created and controlled by Defendants.

### *B. Plaintiff's Attendance and Participation*

12. Plaintiff attended the June 12, 2026 event in reliance on Defendants' representation that it was an in-person audition opportunity.

13. Upon arrival, Plaintiff was directed, along with other attendees, to complete a form supplied by Defendants and titled "STREAMER UNIVERSITY — Admissions Dossier • Class of 2026," and to present it to Defendant Kai Cenat inside the venue.

14. Plaintiff completed that form in his own handwriting and presented it to Kai Cenat. Kai Cenat applied a stamp reading "STAY IN TOUCH" to Plaintiff's form while cameras operated by Defendants' agents were recording.

15. Camera operators working with Kai Cenat filmed an interview-style segment with Plaintiff at that time, during which Plaintiff was visibly shaken and sweating. That footage has never been publicly released.

***C. Conditions at the Event and Plaintiff's Injury***

16. The event was extremely crowded. The ambient temperature that day was approximately ninety degrees Fahrenheit.

17. Defendants did not provide on-site medical staffing, a triage station, an organized crowd-control system, or adequate hydration for the crowd they had assembled.

18. As a result of these conditions, Plaintiff experienced severe physical distress. He inhaled thick smoke present in the area and lost consciousness.

19. While Plaintiff was in this condition, an officer of the New York City Police Department removed Plaintiff from the crowd and directed him to remove the high-visibility orange safety vest he was wearing because of the heat. Plaintiff complied, removed the vest, and sat down to recover, holding the vest on his lap.

20. No employee, agent, or contractor of Defendants arranged medical transport for Plaintiff, directed him to a place of safety, offered him medical attention, or prevented him from re-entering the crowd. After sitting for a period, Plaintiff returned to the high-density crowd.

21. Plaintiff experienced physical after-effects of this incident in the period following the event.

***D. Defendants' Prior Knowledge of Crowd Risk***

22. On August 4, 2023 — approximately thirty-four months before the event at issue — Kai Cenat announced a giveaway to his online following and held it at Union Square Park in Manhattan. The event was unpermitted and unsanctioned by the New York City Police Department.

23. Thousands of people attended. The gathering was declared an unlawful assembly. Sixty-five people were arrested, including thirty juveniles. Police officers and civilians were injured. Kai Cenat was charged with inciting a riot and unlawful assembly; those charges were dismissed in May 2024 following restitution and a public apology in which he acknowledged that the event had created an unsafe situation for attendees and first responders.

24. Plaintiff asserts no claim arising from the August 4, 2023 event and does not allege that Defendants acted wrongfully on that occasion. Plaintiff alleges these facts solely to establish that, well before June 12, 2026, Defendants had actual knowledge that announcing an event to Kai Cenat's online following could draw a crowd exceeding the capacity of the space in which it was held and could result in crowd-related injury.

***E. Defendants' Use of Plaintiff's Likeness***

25. Defendants published a video titled "Streamer University NEW YORK In Person Applications" on YouTube on June 20, 2026, on a channel operated by or for Defendants. The video runs twenty-eight minutes and one second and is monetized; an advertisement played before the video began when Plaintiff viewed it.

26. Plaintiff appears in that video at approximately frames 40 through 96 of 50,369 — approximately one to three seconds into the video. Plaintiff appears seated, in the physical condition described above, with the high-visibility orange safety vest on his lap.

27. Plaintiff is identifiable in that footage. Plaintiff wore the high-visibility orange safety vest at the event, and has used that same style of vest as a recurring element of his visual presentation in previously published commercial music videos, including a music video published before June 12, 2026.

28. Plaintiff's presence at the event, wearing that vest, was separately documented and published by third-party press media on June 12, 2026.

29. The video is not a report on a matter of public interest by a news publisher. It is Defendants' own promotional content for their own branded commercial venture, published on their own monetized channel.

30. Plaintiff's appearance was not incidental. Upon information and belief, the footage of Plaintiff was selected from available material and placed at the opening of the video.

*F. Absence of Written Consent*

31. Plaintiff signed no appearance release, no talent release, and no waiver of any kind. Defendants never presented Plaintiff with any document seeking his consent to the commercial use of his name, portrait, or likeness.

32. The "Streamer University" website published a Privacy Policy, last updated January 2026, addressing across nine sections the categories of information collected from applicants, the uses of that information, the parties with whom it is shared, data security, a two-year retention period, applicant rights, and an age requirement. That Privacy Policy contains no appearance release, no talent release, and no grant of rights in an applicant's name, likeness, voice, or recorded performance.

33. The same website employed an affirmative cookie-consent mechanism, presenting visitors with "Accept" and "Decline" options. Defendants therefore used a recorded, affirmative consent mechanism where they considered consent necessary, and used none for the filming and commercial exploitation of attendees.

34. The "Streamer University" website contained a Frequently Asked Questions section stating that portions of the event may be streamed or recorded and that by attending the reader consents to appearing in that content. Plaintiff did not access or become aware of that section before attending the June 12, 2026 event. That section is no longer present on the page as displayed and is not reachable through the website's primary navigation.

35. Defendants have been represented by counsel in a federal service mark application since September 12, 2025, and were familiar with the clearance and protection of legal rights.

*G. Notice and Preservation*

36. On June 21, 2026, Plaintiff sent a written communication by electronic mail to Defendant Night Media, Inc. asserting claims arising from the June 12, 2026 event, including a claim under N.Y. Civil Rights Law § 51, and directing that all raw audio and video footage in which Plaintiff appears be preserved. Night Media replied the same day.

37. Defendants' published Privacy Policy states that application data is retained for up to two years after the event for which the applicant applied. Plaintiff has requested no deletion of his data.

38. Upon information and belief, Defendants retain possession, custody, or control of unreleased footage of Plaintiff recorded at the June 12, 2026 event.

**V. FIRST CAUSE OF ACTION**

**(Violation of New York Civil Rights Law §§ 50 and 51 — Against All Defendants)**

39. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein.

40. Defendants used Plaintiff's portrait and picture within the State of New York for purposes of trade and for advertising purposes.

41. Defendants did not obtain Plaintiff's written consent to that use, as N.Y. Civil Rights Law § 51 requires.

42. Defendants acted knowingly. Defendants were represented by counsel in intellectual property matters, employed affirmative consent mechanisms on their own platform where they deemed consent necessary, and nonetheless obtained no written release from Plaintiff before using his likeness commercially.

43. As a direct and proximate result, Plaintiff has suffered damages, including the value of the unauthorized commercial use of his likeness and emotional distress.

**VI. SECOND CAUSE OF ACTION**

**(Negligence — Against All Defendants)**

44. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein.

45. Defendants, having organized, promoted, staffed, and directed the June 12, 2026 event and having invited Plaintiff and others to attend, owed Plaintiff a duty to exercise reasonable care in light of all the circumstances, including the likelihood of injury, the seriousness of the potential injury, and the burden of avoiding the risk.

46. Defendants breached that duty by assembling a large crowd in a confined area in approximately ninety-degree heat without medical staffing, triage, organized crowd control, or adequate hydration, and by failing to render or summon aid when Plaintiff lost consciousness in plain view of their staff.

47. The risk was foreseeable to Defendants, who had direct prior experience of a crowd assembled through the same mechanism exceeding the capacity of the space and resulting in injuries and arrests.

48. As a direct and proximate result of Defendants' breach, Plaintiff suffered physical injury, physical after-effects, and emotional distress.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, as follows:

A. Compensatory damages for physical injury, pain and suffering, and emotional distress, in an amount to be determined at trial and exceeding $75,000, exclusive of interest and costs;
B. Compensatory damages measured by the fair value of the unauthorized commercial use of Plaintiff's likeness, in an amount to be determined at trial;
C. Exemplary damages as permitted by N.Y. Civil Rights Law § 51;
D. An injunction under N.Y. Civil Rights Law § 51 restraining Defendants from further use of Plaintiff's name, portrait, picture, or likeness without his written consent;
E. An order directing Defendants to preserve, and to produce or destroy, all raw and unreleased audio and video recordings of Plaintiff made at the June 12, 2026 event, and to certify compliance under oath;
F. Plaintiff's costs and disbursements of this action; and
G. Such other and further relief as the Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 24, 2026

Respectfully submitted,

**Caleb Gottfried**
5504 13th Ave, Unit #330
Brooklyn, NY 11219
(363) 888-6743
snvrk@snvrkotics.com
Plaintiff pro se

## IX. CERTIFICATE OF COMPLIANCE WITH WORD COUNT

I hereby certify that this First Amended Complaint complies with the applicable word count and page limits under Chief Judge Laura Taylor Swain's Individual Practices. According to the word count feature of the word processing system used to prepare this document, the First Amended Complaint contains 2,044 words, excluding the header, caption, and signature block.

Dated: July 24, 2026

Respectfully submitted,

**Caleb Gottfried**
5504 13th Ave, Unit #330
Brooklyn, NY 11219
(363) 888-6743
snvrk@snvrkotics.com
Plaintiff pro se