UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CALEB GOTTFRIED,
Plaintiff,
Civil Action No. 1:26-cv-05471 (DEH)(RWL)
-against-
NIGHT MEDIA, INC., KAI CENAT LLC (a New York limited liability company), and KAI CENAT LLC (a Georgia limited liability company),
Defendants.
-----------------------------------------------------------X

**FOURTH AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Caleb Gottfried, appearing pro se, alleges as follows:

## I. NATURE OF THE ACTION

1. This action arises from injuries Plaintiff sustained on June 12, 2026 at an event organized, promoted, and controlled by Defendants in Manhattan, and from Defendants' subsequent use of Plaintiff's likeness in a commercial promotional video published and monetized without his written consent.

2. Defendants advertised publicly for attendance at the event. Plaintiff attended because they did. Defendants published the conditions on which attendees would be admitted, and those conditions said nothing about recording. Defendants filmed Plaintiff and published his picture in the opening seconds of a video promoting the program they sell. They obtained no written consent from him and never asked for any.

3. Plaintiff brings this action solely in his individual capacity. The injuries alleged are personal to him: physical injury sustained at the event, and the unauthorized use of his own portrait and likeness. Plaintiff seeks no relief on behalf of SNVRKOTICS LLC or any other entity. Plaintiff asserts no claim for trademark infringement and asserts no claim belonging to any person or entity other than himself.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in New York County, New York.

## III. PARTIES

6. Plaintiff Caleb Gottfried is a natural person. He is domiciled in, and is a citizen of, the State of New Jersey. Plaintiff resides in New Jersey, maintains his permanent home there, and intends to remain there indefinitely. The Brooklyn, New York address appearing in

Plaintiff's signature block and on the docket in this action is a mailing address only, maintained for the receipt of correspondence and service in this action. Plaintiff does not reside at that address, and that address is not his domicile. Plaintiff uses a mailing address rather than his residential address because this proceeding is publicly docketed and Plaintiff wishes to keep his home address out of the public record. Plaintiff will promptly notify the Court and all counsel of any change to the address at which he receives mail.

7. Defendant Night Media, Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business in Austin, Texas. It is a talent management company. It is a citizen of Delaware and Texas, as Night Media admits in its Answer.

8. Defendant Kai Cenat LLC (New York) is a limited liability company that has appeared in this action and states in its Answer that it is organized under the laws of the State of New York. For purposes of diversity jurisdiction, a limited liability company is a citizen of every State of which any of its members is a citizen. Upon information and belief, no member of this entity is a citizen of New Jersey.

9. Defendant Kai Cenat LLC (Georgia) is a limited liability company organized under the laws of the State of Georgia. Records of the Georgia Secretary of State, Corporations Division, list Kai Cenat LLC, Control Number 24104435, as a domestic limited liability company, with a state of formation of Georgia, a date of formation of May 14, 2024, a business status of "Active/Compliance," and a last annual registration year of 2026. Those records list the entity's principal office address as 2900 Delk Road, Suite 700, Atlanta, Georgia 30067-5350, and its registered agent as The Ultimate Tax Experience LLC, 1320 Ellsworth Industrial Blvd, Suite A800, Atlanta, Georgia 30318, in Fulton County. Those records classify the entity under the NAICS code for Arts, Entertainment, and Recreation and the NAICS sub-code for Independent Artists, Writers, and Performers. United States Patent and Trademark Office records for Serial No. 99391010 identify this entity as the applicant of record for the service mark "SU STREAMER UNIVERSITY," listing its owner address as 2900 Delk Road, Ste 700 #255, Marietta, Georgia 30067. For purposes of diversity jurisdiction, a limited liability company is a citizen of every State of which any of its members is a citizen. Upon information and belief, no member of this entity is a citizen of New Jersey.

10. The entities identified in Paragraphs 8 and 9 bear the same name. Each Defendant that has appeared in this action denies responsibility for the conduct alleged herein. Plaintiff is presently unable to determine, without discovery, which entity or entities organized, promoted, staffed, or directed the June 12, 2026 event and published the video at issue. Plaintiff therefore pleads in the alternative pursuant to Fed. R. Civ. P. 8(d)(2), and the term "Defendants" as used herein refers to those Defendants responsible for the conduct alleged.

## IV. FACTUAL ALLEGATIONS

### A. Defendants Organized and Controlled the Venture and the Event

11. "Streamer University" is a branded commercial venture created, promoted, and controlled by Defendants. Defendant Kai Cenat LLC (Georgia) has applied to register "SU STREAMER UNIVERSITY" as a federal service mark covering educational and

entertainment services, U.S. Serial No. 99391010, filed September 12, 2025. A Notice of Allowance issued May 5, 2026.

12. Kai Cenat is an individual who is not a party to this action. In a recorded broadcast published at https://www.twitch.tv/videos/2468531436, at approximately 00:11:56, he stated of the venture: “We own the IP of Streamer University, chat. So, like, it is ours to share amongst. You feel me? So, yeah, bro.” Plaintiff has preserved a copy of that recording.

13. Kai Cenat is identified in the Answer filed at ECF No. 15 as the sole member of Defendant Kai Cenat LLC (New York). The venture at issue is marketed under his name. Upon information and belief, Kai Cenat acted for and on behalf of Defendants in announcing, promoting, and conducting the June 12, 2026 event, and Defendants authorized, ratified, adopted, and took the benefit of his announcement of that event and of the conditions of attendance published with it. Defendants conducted the event on the date, at the hour, and at the address so announced, and admitted attendees on the conditions so published.

14. Although Kai Cenat is not a party to this action, allegations in this pleading that Defendants announced, promoted, published, filmed, or conducted are made on the basis stated in the preceding paragraph, and Plaintiff pleads in the alternative under Fed. R. Civ. P. 8(d)(2) as to which Defendant or Defendants is responsible for each act alleged.

15. The Venture operates a website at streameruniversity.com, through which it accepts applications for admission to its program.

16. On June 12, 2026, Defendants held an in-person event at John Jay College of Criminal Justice in Manhattan, New York. Defendants marketed the event to prospective attendees as an in-person audition and application opportunity for “Streamer University.”

17. Defendants organized, promoted, staffed, and directed the June 12, 2026 event. Defendants set the terms on which attendees would be admitted, supplied the forms attendees were required to complete, and directed the audition process. The event was held on premises owned by a third party, but the conditions giving rise to Plaintiff’s injury were created and controlled by Defendants.

**B. Defendants Solicited Attendance by Public Advertisement**

18. On June 11, 2026, the day before the event, Defendants publicly announced it. The announcement stated that in-person applications would be held at 1:00 p.m. on June 12, 2026 at 860 11th Avenue, New York, New York 10019 — the address of the New Building of John Jay College of Criminal Justice — and that further in-person application events would be held in Los Angeles on June 14, 2026 and in Atlanta on June 16, 2026.

19. The announcement was published on the verified Instagram account @kaicenat and on the verified X account @KaiCenat. Plaintiff saw the announcement on Instagram. Plaintiff did not see the post on X, and pleads its contents upon information and belief on the basis of an article published by Dexerto on June 12, 2026, which reports that the post read: “Introducing Streamer University 2026 IN PERSON APPLICATIONS, come to my office and show me why you should be in SU’26.”

20. The announcement described the event on its face as “IN-PERSON APPLICATIONS.” The event was not a public occurrence at which persons happened to be present. It was a process by which persons applied to Defendants for admission to the program Defendants sell.

21. Upon information and belief, and on the basis of the article described in Paragraph 19, Kai Cenat described the location of the event as his office.

22. Plaintiff saw the announcement on Instagram before the event and attended the June 12, 2026 event in reliance upon it. Plaintiff was not invited individually and was not on any list. He learned of the event’s date, time, and location from that announcement.

23. Plaintiff attended the June 12, 2026 event in reliance on Defendants’ representation that it was an in-person audition and application opportunity for admission to the Streamer University program. Plaintiff understood that representation literally and relied upon it.

24. Upon information and belief, the June 12, 2026 event was the first in-person audition or application event ever held in connection with the Venture. The 2025 Streamer University program included no in-person audition or application component.

25. There was accordingly no prior event of that kind from which an attendee could have learned what attendance would involve, and no practice or custom concerning the recording of attendees at such an event had been established.

26. Before attending, Plaintiff searched for publicly available materials describing what attendees should expect at the in-person audition. He found none. Plaintiff had not watched any prior Streamer University program, as he stated in answer to Question 7 on the form he completed at the event and submitted to Defendants.

27. Defendants published nothing describing what attendees should expect at the June 12, 2026 event beyond the conditions of entry and rules of conduct described below, neither of which referred to recording.

28. Plaintiff attended for the purpose of applying for admission to that program. He did not attend for the purpose of being recorded, of appearing in any published content, or of contributing to the promotion of the Venture, and he was not told that attendance served any such purpose.

29. Upon information and belief, the June 12, 2026 event served a promotional and content-production purpose for Defendants in addition to the admissions purpose represented to attendees. Defendants recorded attendees throughout the event and thereafter published the recorded material to promote the Venture and to solicit applications to it.

30. The crowd that attended the June 12, 2026 event was assembled by Defendants’ advertisement, for Defendants’ benefit, on premises Defendants had engaged and controlled.

**C. Defendants Published the Conditions of Attendance, and Recording Was Not Among Them**

31. Published with that announcement were the conditions on which attendees would be admitted to the event. Upon information and belief those conditions were published by or at the direction of Defendants, and the Dexerto article described above reports that the entry requirements for the event were posted by “Kai’s team.” Defendants admitted attendees to the event on those conditions. Those conditions were: that an attendee be eighteen years of age or older; that an attendee present a valid government-issued photographic identification; and that a clear-bag policy applied, prohibiting backpacks, purses, and other non-clear bags.

32. Published with the same announcement, and upon information and belief published by or at the direction of Defendants, were rules of conduct governing attendees. Those rules directed attendees to be respectful of staff, security, law enforcement, local residents, and fellow attendees; stated that “fighting, pushing, vandalism, or disruptive behavior will not be tolerated”; directed attendees to follow instructions; and stated that the event would be shut down if matters got out of control.

33. No published announcement, condition of entry, or rule of conduct for the June 12, 2026 event stated that attendees would be recorded, filmed, photographed, livestreamed, or broadcast.

34. No published announcement, condition of entry, or rule of conduct for the June 12, 2026 event contained a release, a waiver, or any grant of rights in an attendee’s name, portrait, picture, voice, or recorded performance.

35. No published announcement, condition of entry, or rule of conduct for the June 12, 2026 event referred an attendee to any terms and conditions, privacy policy, frequently-asked-questions page, or other document containing any such release, waiver, or grant of rights.

36. Defendants thereby addressed the age of attendees, the identification attendees must present, the items attendees could carry, and the conduct attendees must observe. Defendants did not state, as a condition of attendance, that attendees consented to the commercial use of their name, portrait, picture, or voice.

**D. Plaintiff’s Online Application**

37. On or about June 9, 2026, three days before the event, Plaintiff submitted an online application to Defendants through the website streameruniversity.com.

38. That application was presented as a four-step form. The steps were labeled, in order: “1. Personal Information,” “2. Social Media & Platforms,” “3. Details & Contact,” and “4. Uploads & Cameraman.”

39. As part of that application Plaintiff uploaded a video file of himself. He uploaded it for the purpose of applying for admission to the program. He did not upload it for publication, for advertising, or for any promotional use.

40. The first step of that application, as archived by the Internet Archive on June 8, 2026 at 23:47:48 Coordinated Universal Time, contains no release of claims, no grant of rights in an applicant’s name, portrait, picture, voice, or performance, and no statement concerning

recording or filming. The only agreement mechanism presented on that step is a banner reading: “We use cookies to enhance your experience and analyze site traffic. By continuing, you agree to our Privacy Policy,” with buttons marked “Decline” and “Accept.”

41. At the time Defendants recorded Plaintiff at the June 12, 2026 event, Defendants were therefore in possession of Plaintiff’s name, his contact information, a written application submitted by him, and a video file uploaded by him.

**E. Plaintiff’s Attendance and Participation**

42. Upon arrival, Plaintiff was directed, along with other attendees, to complete a form supplied by Defendants and titled “STREAMER UNIVERSITY — Admissions Dossier • Class of 2026,” and to present it to Kai Cenat inside the venue.

43. Plaintiff completed that form in his own handwriting and presented it to Kai Cenat. Kai Cenat applied a stamp reading “STAY IN TOUCH” to Plaintiff’s form while cameras operated by Defendants’ agents were recording.

44. When Kai Cenat stamped Plaintiff’s form, he told Plaintiff, in substance, that if Plaintiff was not selected through the in-person process, Plaintiff should apply online. Plaintiff alleges that the in-person audition and the online application were two separate operations. Attending the in-person audition was not part of the online application, and the online application was not part of the in-person audition.

45. Plaintiff was not accepted into the program.

46. Camera operators working with Kai Cenat filmed an interview-style segment with Plaintiff at that time, during which Plaintiff was visibly shaken and sweating. That footage has never been publicly released.

47. On July 22, 2026, after this action was commenced, a video titled “Streamer University 2026 | Behind The Scenes,” eleven minutes and thirty-eight seconds in length, was published on the YouTube channel “Kai Cenat Live,” at https://www.youtube.com/watch?v=yeC4zepKTUw.

48. At approximately 00:01:21 to 00:01:29 of that recording, a speaker identified as Stephon Phillip describes the form completed by attendees waiting in the line as “basically them filling out a little brief little form . . . that says what they are applying for, but basically something Kai can see when he — when they walk in.”

49. At approximately 00:01:34 to approximately 00:01:40 of that recording, Kai Cenat states of that form: “I mean, it’s cool for me, like I can, like, look at some [expletive]. I can stamp it. I can, like, play around with that [expletive]. Like it’s fun to do that.” The bracketed notations reflect words obscured in the automatically generated captions displayed by the platform. Plaintiff has preserved a copy of the recording.

50. The form so described is the form Plaintiff was required to complete and present, and the stamping so described is the stamping of Plaintiff’s form described above, which occurred while cameras operated by Defendants’ agents were recording.

51. Plaintiff does not contend that the Streamer University program did not occur, or that no participant was selected, and Plaintiff asserts no claim of fraud or misrepresentation in this action. Plaintiff pleads the statements described above on the character of the in-person intake process and its relationship to Defendants' content production, and for no other purpose.

**F. Conditions at the Event and Plaintiff's Injury**

52. The event was extremely crowded. Plaintiff arrived at approximately 3:30 a.m. and waited outdoors with other attendees for approximately ten hours before being admitted to the building in the early afternoon. Kai Cenat waved to the attendees waiting outside at approximately 1:21 p.m., while Plaintiff was still outside, and Plaintiff was photographed in the building's lower-level hallway at approximately 2:18 p.m. Weather records for June 12, 2026, published by Weather Underground for the Downtown Manhattan Heliport weather station (KJRB), show that the temperature remained in the mid-seventies overnight, reached 82°F with 79% relative humidity at approximately 11:00 a.m., rose to 87°F by approximately noon, and reached a high of 92°F that afternoon, sixteen degrees above the historic average high for that date. At those readings, the heat index at approximately 11:00 a.m. was approximately ninety degrees Fahrenheit.

53. Defendants did not provide on-site medical staffing, a triage station, an organized crowd-control system, or adequate hydration for the crowd they had assembled.

54. As a result of these conditions, Plaintiff experienced severe physical distress. He inhaled thick smoke present in the area. On two occasions, at approximately 11:00 a.m., Plaintiff came close to losing consciousness while standing in the crowd. During one of those episodes, Plaintiff fell. Bystanders called out for assistance on Plaintiff's behalf, and another attendee poured water on Plaintiff. No employee, agent, or contractor of Defendants came to Plaintiff's aid.

55. While Plaintiff was in this condition, an officer of the New York City Police Department removed Plaintiff from the crowd and directed him to remove the high-visibility orange safety vest he was wearing because of the heat. Plaintiff complied, removed the vest, and sat down to recover, holding the vest on his lap.

56. No employee, agent, or contractor of Defendants arranged medical transport for Plaintiff, directed him to a place of safety, offered him medical attention, or prevented him from re-entering the crowd. After sitting for a period, Plaintiff returned to the high-density crowd.

57. Plaintiff's symptoms did not resolve. He remained unwell for the balance of the day. He had traveled to the event by automobile, which was the only means available to him to return to his residence in New Jersey. No person affiliated with the event offered him any alternative means of returning home or advised him against driving. Plaintiff left the event at approximately 6:00 p.m. and drove home while still feeling ill. During that drive he experienced episodes in which he had difficulty concentrating and focusing.

58. Plaintiff experienced physical after-effects of this incident in the period following the event. For approximately three days he experienced a productive cough. For approximately one week he experienced fatigue. Plaintiff has continued to experience unease in dense crowds. On August 31, 2026, Plaintiff was examined by a physician concerning these symptoms and was referred for cardiology evaluation. Plaintiff's treating physicians recorded diagnoses of pre-syncope (ICD-10-CM R55) and of heat exhaustion, sequela (ICD-10-CM T67.5XXS). On September 28, 2026, Plaintiff's treating cardiologist assessed that his pre-syncope "[a]ppears to be likely secondary to dehydration."

**G. Defendants' Prior Knowledge of Crowd Risk**

59. On August 4, 2023 — approximately thirty-four months before the event at issue — Kai Cenat announced a giveaway to his online following and held it at Union Square Park in Manhattan. The event was unpermitted and unsanctioned by the New York City Police Department.

60. Thousands of people attended. The gathering was declared an unlawful assembly. Sixty-five people were arrested, including thirty juveniles. Police officers and civilians were injured. Kai Cenat was charged with inciting a riot and unlawful assembly; those charges were dismissed in May 2024 following restitution and a public apology in which he acknowledged that the event had created an unsafe situation for attendees and first responders.

61. Plaintiff asserts no claim arising from the August 4, 2023 event and does not allege that Defendants acted wrongfully on that occasion. Plaintiff alleges these facts solely to establish that, well before June 12, 2026, Defendants had actual knowledge that announcing an event to Kai Cenat's online following could draw a crowd exceeding the capacity of the space in which it was held and could result in crowd-related injury.

62. Defendants announced the event on June 11, 2026, the day before it was held. According to the Dexerto article described in Paragraph 19, titled "Kai Cenat's Streamer University auditions pack NYC after streamers camp out overnight," attendees began lining up outside the New York City location at approximately 8:00 p.m. on June 11, 2026, more than sixteen hours before applications were set to begin, and the line had grown significantly by midnight.

63. When Plaintiff arrived at approximately 3:30 a.m. on June 12, 2026, metal police barricades were already in place along the line, and roughly ten to twenty police officers were present. Police officers remained present from Plaintiff's arrival onward.

64. At approximately 4:00 a.m., a camera operator was recording interviews with attendees waiting in line. He asked attendees about themselves and gave them advice about what Kai Cenat would look for in applicants. Upon information and belief, that camera operator was recording for, and acting on behalf of, Defendants.

65. Upon information and belief, Defendants therefore knew, by approximately 4:00 a.m. on June 12, 2026 — about seven hours before Plaintiff came close to losing consciousness —

that the crowd they had summoned had been assembling outdoors since the previous evening and had grown to a size that required police barricades and a substantial police presence.

66. Between his arrival and approximately 11:00 a.m., Plaintiff did not observe any medical personnel, first-aid or triage station, cooling area, or water station provided by or on behalf of Defendants. After Plaintiff was admitted to the building in the early afternoon, following the two episodes described above, the only drink Plaintiff observed available to attendees inside the building was Red Bull energy drinks. Plaintiff did not observe any water available.

67. Upon information and belief, Defendants did not provide medical staffing, triage, adequate hydration, or an organized crowd-management system at any time during the approximately fifteen hours in which the crowd assembled and waited before Plaintiff came close to losing consciousness.

68. Later on June 12, 2026, Kai Cenat stated on a broadcast that the building was requiring him to leave. A recording of that statement, titled "Kai Cenat Forced to Shutdown Streamer University NYC Auditions," was published by a third party on June 13, 2026 on the YouTube channel @clippinati, at https://www.youtube.com/watch?v=yqXnjME73Pc, at approximately 00:00:08 to 00:00:22. Plaintiff has preserved a copy of that recording. The location and persons shown in it are consistent with the event as Plaintiff observed it in person.

**H. Defendants' Knowledge That Recording Releases Were Required**

69. On May 16, 2025 — thirteen months before the event at issue — Kai Cenat LLC, operating as "Streamer University," executed a written Use of Facilities Agreement with The University of Akron, a public institution, for the 2025 Streamer University program held May 19 through May 28, 2025, with livestreaming from May 22 through May 25, 2025. The total event estimate stated in that agreement was $473,971.95. Plaintiff obtained the agreement by public records request under Ohio Rev. Code § 149.43.

70. Under the heading "Releases," that agreement provides: "USER is responsible for obtaining any necessary releases associated with USER's use of facility, including, but not limited to, photo, video, and audio recording releases." The same requirement appears again among the Function Rules of the agreement.

71. Under the heading "Recording," that agreement refers to an attached Exhibit D, a Location Release. Paragraph 2 of that Location Release provides: "Producer will obtain any necessary releases from nonparticipants as necessary under any legal requirements."

72. The same paragraph provides: "Producer is the sole owner of the Program and all photographs and recordings made pursuant to this Agreement."

73. Defendants therefore acknowledged in writing, more than a year before the June 12, 2026 event, that obtaining photographic, video, and audio recording releases — including releases from nonparticipants — was their own responsibility, while asserting ownership of all recordings made at their program.

74. Plaintiff was a nonparticipant within the meaning of that undertaking. He applied, he attended, and he was not accepted. Defendants sought no release from him, and none exists.

75. Defendants have been represented by counsel in a federal service mark application since September 12, 2025, and were familiar with the clearance and protection of legal rights.

**I. Defendants' Use of Plaintiff's Likeness**

76. Defendants published a video titled "Streamer University NEW YORK In Person Applications" on YouTube on June 20, 2026, on a channel operated by or for Defendants. The video runs twenty-eight minutes and one second and is monetized; an advertisement played before the video began when Plaintiff viewed it.

77. Plaintiff appears in that video at approximately frames 40 through 96 of 50,369 — approximately one to three seconds into the video. Plaintiff appears seated, in the physical condition described above, with the high-visibility orange safety vest on his lap and a military-style helmet resting on his lap.

78. Plaintiff appears in the video before any other attendee of the June 12, 2026 event appears in it, and before the interview segments and other recorded material that constitute the body of the video begin.

79. Upon information and belief, the opening seconds of the video consist of footage selected and assembled to hold the attention of a viewer who has not yet decided to continue watching, and Plaintiff's image was selected and placed at the opening of the video for that purpose.

80. Plaintiff's head and upper body are visible in that footage. His face is partially visible and is partially obscured — by the brim of the hat he was wearing, by the angle at which he was recorded, and by other persons moving through the frame.

81. Plaintiff is nonetheless identifiable in that footage to those who know him, by the combination of characteristics displayed: his head, build, and posture; the star-pattern Amiri hat he was wearing, which is visible in the video; the high-visibility orange safety vest visible with him, which he wore at the event and has used as a recurring element of his visual presentation in previously published commercial music videos, including a music video published before June 12, 2026; the military-style helmet resting on his lap; and his seated position.

82. Plaintiff's presence at the event, wearing that vest, was separately documented and published by third-party press media on June 12, 2026.

83. The video is not a report on a matter of public interest by a news publisher. It is Defendants' own promotional content for their own branded commercial venture, published on their own monetized channel. It does not report any event for an audience seeking information, and it is not about any person's life, work, or career.

84. The purpose of the video is to display the attendance and demand the event drew, to promote the Streamer University program, and to solicit applications to that program and sponsorship of it.

85. Plaintiff's appearance was not incidental. Upon information and belief, the footage of Plaintiff was selected from available material and placed at the opening of the video. Defendants placed cameras at their own event, recorded Plaintiff, edited the footage, and selected the frames that open the video. Defendants could have omitted him.

86. Plaintiff is among the attendees whose presence constitutes the demand the video exists to display.

**J. Absence of Written Consent**

87. Plaintiff signed no appearance release, no talent release, and no waiver of any kind. Defendants never presented Plaintiff with any document seeking his consent to the commercial use of his name, portrait, or likeness. No person asked Plaintiff to sign any such document. Plaintiff was never paid.

88. The "Streamer University" website published a Privacy Policy, last updated January 2026, addressing across nine sections the categories of information collected from applicants, the uses of that information, the parties with whom it is shared, data security, a two-year retention period, applicant rights, and an age requirement. That Privacy Policy contains no appearance release, no talent release, and no grant of rights in an applicant's name, likeness, voice, or recorded performance.

89. The same website employed an affirmative cookie-consent mechanism, presenting visitors with "Accept" and "Decline" options. Defendants therefore used a recorded, affirmative consent mechanism where they considered consent necessary, and used none for the filming and commercial exploitation of attendees.

90. The "Streamer University" website contained a Frequently Asked Questions section stating that portions of the event may be streamed or recorded and that by attending the reader consents to appearing in that content. Plaintiff did not access or become aware of that section before attending the June 12, 2026 event. Nothing in the application Plaintiff submitted required an applicant to open or read that section, and no part of its text was displayed on the application. That section is no longer present on the page as displayed and is not reachable through the website's primary navigation.

91. No Defendant has produced, identified, or described any writing by which Plaintiff consented to the use of his name, portrait, picture, or voice for advertising purposes or for purposes of trade.

**K. Notice, Preservation, and Unavailability of Records**

92. On June 21, 2026, Plaintiff sent a written communication by electronic mail to Defendant Night Media, Inc. asserting claims arising from the June 12, 2026 event, including a claim

under N.Y. Civil Rights Law § 51, and directing that all raw audio and video footage in which Plaintiff appears be preserved. Night Media replied the same day.

93. On September 7, 2026, Plaintiff served a further written litigation hold identifying material to be preserved and requesting written confirmation that it was being preserved. No Defendant responded.

94. Defendants' published Privacy Policy states that application data is retained for up to two years after the event for which the applicant applied. Plaintiff has requested no deletion of his data.

95. Upon information and belief, Defendants retain possession, custody, or control of unreleased footage of Plaintiff recorded at the June 12, 2026 event.

96. The Frequently Asked Questions section described above was publicly available in June 2026 and was no longer reachable through the website's navigation by July 19, 2026. Plaintiff preserved contemporaneous archival captures of both conditions.

97. The announcement described in Paragraphs 18 and 19 is no longer available on the Instagram account @kaicenat or on the X account @KaiCenat. Plaintiff searched for it on September 30, 2026 and did not find it on either account, and found no capture of either post in the Internet Archive. A contemporaneous republication of the Instagram announcement remains available on a related account, and the text of the X announcement is preserved in the Dexerto article described in Paragraph 19. Plaintiff makes no allegation as to who removed either post, when, or why.

## V. FIRST CAUSE OF ACTION

**(Violation of New York Civil Rights Law §§ 50 and 51 — Against All Defendants)**

98. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein.

99. Defendants used Plaintiff's portrait and picture within the State of New York for purposes of trade and for advertising purposes.

100. Defendants did not obtain Plaintiff's written consent to that use, as N.Y. Civil Rights Law § 51 requires.

101. Defendants acted knowingly. Defendants had agreed in writing, thirteen months before the event, that obtaining photo, video, and audio recording releases — including from nonparticipants — was their responsibility. Defendants were represented by counsel in intellectual property matters. Defendants employed affirmative consent mechanisms on their own platform where they deemed consent necessary. Defendants published detailed conditions of attendance and omitted any term concerning recording. Defendants nonetheless obtained no written release from Plaintiff before using his likeness commercially.

102. Plaintiff is a recording artist and photographer who performs and publishes commercially under the name SNVRK. He is the founder and sole member of SNVRKOTICS LLC, which holds the registered trademark SNVRK, United States Patent and Trademark Office

Registration No. 8300206, Serial No. 98833584. The registration record reflects, under the heading Name Portrait Consent, that the mark identifies Caleb Gottfried, with his written consent to registration of record. Plaintiff has released commercial musical works and has published commercial music videos, in which the high-visibility orange safety vest described above appears as a recurring element of his visual presentation.

103. Plaintiff's name, portrait, picture, and likeness therefore have commercial value to him, and he has not licensed or granted their use to Defendants or to any person for the purposes described in this pleading.

104. As a direct and proximate result, Plaintiff has suffered damages, including the fair value of the unauthorized commercial use of his name, portrait, picture, and likeness, and emotional distress.

## VI. SECOND CAUSE OF ACTION

**(Negligence — Against All Defendants)**

105. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein.

106. Defendants, having organized, promoted, staffed, and directed the June 12, 2026 event and having invited Plaintiff and others to attend, owed Plaintiff a duty to exercise reasonable care in light of all the circumstances, including the likelihood of injury, the seriousness of the potential injury, and the burden of avoiding the risk.

107. Defendants breached that duty by assembling a large crowd in a confined area in heat that reached a heat index of approximately ninety degrees, without medical staffing, triage, organized crowd control, or adequate hydration, and by failing to render or summon aid when Plaintiff came close to losing consciousness in plain view of their staff and other attendees called out for assistance.

108. The risk was foreseeable to Defendants, who had direct prior experience of a crowd assembled through the same mechanism exceeding the capacity of the space and resulting in injuries and arrests.

109. As a direct and proximate result of Defendants' breach, Plaintiff suffered physical injury, physical after-effects requiring medical evaluation, and emotional distress.

## VII. THIRD CAUSE OF ACTION

**(Gross Negligence — Against All Defendants)**

110. Plaintiff repeats and realleges each preceding paragraph as if fully set forth herein.

111. Before Plaintiff was injured, Defendants knew that announcing an event to Kai Cenat's online following could draw a crowd exceeding the capacity of the space and could result in crowd-related injury, and, upon information and belief, knew that the crowd they had summoned for June 12, 2026 had been assembling outdoors overnight and had grown to a size requiring police barricades and a substantial police presence.

112. Despite that knowledge, and upon information and belief, Defendants for approximately fifteen hours provided no medical staffing, no triage, no adequate hydration, and no organized crowd management for that crowd, which was waiting outdoors in heat that reached a heat index of approximately ninety degrees.

113. Defendants thereby consciously disregarded a known and serious risk of physical harm to the persons they had summoned, including Plaintiff. Their conduct evinced a reckless disregard for the rights and safety of others.

114. As a direct and proximate result, Plaintiff suffered the physical injury, physical after-effects, and emotional distress described above.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, as follows:

A. Compensatory damages for physical injury, pain and suffering, and emotional distress, in an amount to be determined at trial and exceeding $75,000, exclusive of interest and costs;

B. Compensatory damages measured by the fair value of the unauthorized commercial use of Plaintiff’s likeness, in an amount to be determined at trial;

C. Exemplary damages as permitted by N.Y. Civil Rights Law § 51;

D. An injunction under N.Y. Civil Rights Law § 51 restraining Defendants from further use of Plaintiff’s name, portrait, picture, or likeness without his written consent, and directing the removal of Plaintiff’s name, portrait, picture, and voice from the video described herein;

E. An order directing Defendants to preserve and to produce all raw and unreleased audio and video recordings of Plaintiff made at the June 12, 2026 event, and to certify compliance under oath;

F. Punitive damages on the Third Cause of Action, in an amount to be determined at trial;

G. Plaintiff’s costs and disbursements of this action; and

H. Such other and further relief as the Court deems just and proper.

## IX. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 22, 2026

Respectfully submitted,

/s/ Caleb Gottfried
Caleb Gottfried
Plaintiff pro se
5504 13th Ave, Unit #330

Brooklyn, NY 11219
(363) 888-6743
snvrk@snvrkotics.com

**DECLARATION PURSUANT TO INDIVIDUAL RULE 8**
(Use of Generative Artificial Intelligence)

I, Caleb Gottfried, plaintiff pro se, declare under penalty of perjury:

1. The accompanying Fourth Amended Complaint is filed pursuant to the Court's Order dated October 21, 2026, and is the same pleading submitted as Exhibit 1 to my letter-motion at ECF No. 66, except that the exhibit label has been removed and the signature date updated.

2. In preparing it, I used a generative artificial intelligence tool as a drafting aid.

3. I personally reviewed every sentence of the pleading before submitting it, and I personally verified the existence, text, and current effect of every rule, statute, docket entry, and decision cited.

4. Every factual statement is made on my personal knowledge or on the documents identified, and I believe each to be true. I take full personal responsibility for the contents of the pleading.

Executed on: October 22, 2026

/s/ Caleb Gottfried
Caleb Gottfried
Plaintiff pro se