**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CALEB GOTTFRIED,

Plaintiff,

v.

NIGHT MEDIA, INC., KAI CENAT LLC (a New York limited liability company), and KAI CENAT LLC (a Georgia limited liability company),

Defendants.

Civil Case No. 1:26-cv-05471 (DEH)(RWL)

**DEFENDANT NIGHT MEDIA, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT**

# TABLE OF CONTENTS


**Page**

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 2

I. THE COMPLAINT ALLEGES ALMOST NOTHING ABOUT NIGHT MEDIA ..... 2

II. THE OPEN-CALL AUDITION ON JUNE 12, 2026 ..... 3

A. Plaintiff Does Not Plausibly Allege a Recognizable "Portrait or Picture." ..... 12

B. Plaintiff's Fleeting Appearance Is Incidental to the Video.. ..... 13

C. Plaintiff Voluntarily Made Himself Part of a Public Event and Therefore Cannot Now Claim that His Privacy was Invaded. ..... 15

D. In Any Event, the Video Concerns a Matter of Public Interest and Is Not an Advertisement in Disguise ..... 16

1. The Event Was a Matter of Public Interest. ..... 17

2. Plaintiff's Image Bears a Real Relationship to the Video. ..... 18

3. The Video Is Not an Advertisement in Disguise ..... 18

III. PLAINTIFF'S ALLEGED INJURIES ..... 4

IV. THE VIDEO ..... 5

PROCEDURAL HISTORY ..... 6

APPLICABLE LEGAL STANDARDS ..... 8

ARGUMENT ..... 9

I. THE COMPLAINT PLEADS NO CONDUCT BY NIGHT MEDIA AND IMPERMISSIBLY LUMPS THREE DISTINCT DEFENDANTS TOGETHER ..... 10

II. COUNT I FAILS BECAUSE PLAINTIFF IS NOT RECOGNIZABLE AND HIS FLEETING APPEARANCE DOES NOT CONSTITUTE USE FOR ADVERTISING OR TRADE ..... 11

III. COUNT II FAILS BECAUSE IT DOES NOT PLEAD A COGNIZABLE DUTY OWED BY NIGHT MEDIA OR A BREACH PROXIMATELY CAUSING INJURY ..... 20

IV. COUNT III FAILS BECAUSE THE NEGLIGENCE CLAIM FAILS AND THE COMPLAINT PLEADS NO RECKLESS CONDUCT BY NIGHT MEDIA ..... 23

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
96 N.Y.2d 280 (2001) ....................20, 21

*A.B. v. Staropoli*,
929 F. Supp. 2d 266 (S.D.N.Y. 2013)....................21

*Abdelrazig v. Essence Commc'ns, Inc.*,
225 A.D.2d 498 (1st Dep't 1996) ....................19

*Alfano v. NGHT, Inc.*,
623 F. Supp.2d 355 (E.D.N.Y. 2009) ....................17, 18

*Alfaro v. Wal-Mart Stores, Inc.*,
210 F.3d 111 (2d Cir. 2000)....................20

*Am. Auto. Ins. Co. v. Rest Assured Alarm Sys., Inc.*,
786 F. Supp. 2d 798 (S.D.N.Y. 2011)....................24

*Ann-Margret v. High Soc'y Mag., Inc.*,
498 F. Supp. 401 (S.D.N.Y. 1980) ....................12

*Arrington v. N.Y. Times Co.*,
55 N.Y.2d 433 (1982) ....................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................8

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ....................10, 11

*Auth Token LLC v. City Nat. Bank*,
817 F. Supp. 3d 211 (S.D.N.Y. 2026)....................9

*Battaglia v. Town of Bethlehem*,
46 A.D.3d 1151 (3d Dep't 2007) ....................21

*Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*,
692 F.3d 42 (2d Cir. 2012)....................23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................8

*Benson v. IT & LY Hairfashion, NA, Inc.*,
94 A.D.3d 932 (2d Dep't 2012) ....................22

*Blech v. W. Park Presbyterian Church*,
97 A.D.3d 443 (1st Dep't 2012) ....................22

*Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*,
369 F.3d 212 (2d Cir. 2004)....................9

*Brodie v. Green Spot Foods, LLC*,
503 F. Supp. 3d 1 (S.D.N.Y. 2020) ....................8

*Burck v. Mars, Inc.*,
571 F. Supp. 2d 446 (S.D.N.Y. 2008)....................13

*Burgin v. Nat'l Football League*,
No. 13 Civ. 8166 (KBF), 2014 WL 1760112 (S.D.N.Y. Apr. 30, 2014) ....................18

*Bynum v. Camp Bisco, LLC*,
135 A.D.3d 1060 (3d Dep't 2016)....................23

*Carley v. Theater Dev. Fund*,
22 F. Supp. 2d 224 (S.D.N.Y. 1998)....................22

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)....................9

*Cohen v. Herbal Concepts, Inc.*,
63 N.Y.2d 379 (1984) ....................12, 13

*Collins v. Resto*,
746 F. Supp. 360 (S.D.N.Y. 1990) ....................20

*Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*,
81 N.Y.2d 821 (1993) ....................23

*Cummings v. Soul Train Holdings LLC*,
67 F. Supp. 3d 599 (S.D.N.Y. 2014)....................15, 19

*De Gregorio v. CBS, Inc.*,
123 Misc. 2d 491 (Sup. Ct. N.Y. Cnty. 1984) ....................13, 14

*Delan v. CBS, Inc.*,
91 A.D.2d 255 (2d Dep't 1983)....................13, 14, 19

*Diokhane v. 57th & Irving, Inc.*,
2009 N.Y. Slip Op. 30381(U), 2009 WL 497309 (Sup. Ct. N.Y. Cnty. Feb. 18, 2009) ....................14, 16, 18

*Evergreen E. Coop. v. Whole Foods Mkt., Inc.*,
No. 21-2827-cv, 2023 WL 545075 (2d Cir. Jan. 27, 2023)........8

*Farash v. Continental Airlines, Inc.*,
574 F. Supp. 2d 356 (S.D.N.Y. 2008)........23

*Farmer v. Cnty. of Westchester*,
No. 18 Civ. 2691 (NSR), 2021 WL 4199944 (S.D.N.Y. Sept. 15, 2021)........10

*Finger v. Omni Publ'ns Int'l, Ltd.*,
77 N.Y.2d 138 (1990)........14, 18

*Fontaine v. Ryan*,
849 F. Supp. 190 (S.D.N.Y. 1993)........23

*In re Fyre Festival Litig.*,
399 F. Supp. 3d 203 (S.D.N.Y. 2019)........20, 22, 24

*Gastineau v. ESPN Inc.*,
No. 25 Civ. 2041 (PAE), 2026 WL 734841 (S.D.N.Y. Mar. 16, 2026)........17

*Gautier v. Pro-Football, Inc.*,
304 N.Y. 354 (1952)........15

*Giovacco v. Graham*,
213 A.D.3d 523 (1st Dep't 2023)........20

*Goetz v. Ainsworth Pet Nutrition, LLC*,
768 F. Supp. 3d 645 (S.D.N.Y. 2025)........10

*Groden v. Random House, Inc.*,
61 F.3d 1045 (2d Cir. 1995)........11, 19

*Estate of Hemingway v. Random House, Inc.*,
23 N.Y.2d 341 (1968)........16

*Herink v. Harper & Row Publishers, Inc.*,
607 F. Supp. 657 (S.D.N.Y. 1985)........19

*Hogan v. Fischer*,
738 F.3d 509 (2d Cir. 2013)........9

*Hollander v. Pressreader, Inc.*,
No. 19-CV-2130 (AJN), 2020 WL 2836189 (S.D.N.Y. May 30, 2020)........17

*Howell v. N.Y. Post Co.*,
81 N.Y.2d 115 (1993)........17

*Jahr Printing & Publ'g*,
94 N.Y.2d 436 (2000) .....17

*JBCHoldings NY, LLC v. Pakter*,
931 F. Supp. 2d 514 (S.D.N.Y. 2013).....8

*Khozissova v. Ralph Lauren Corp.*,
228 A.D.3d 508 (1st Dep't 2024) .....14, 17

*Lauer v. City of New York*,
95 N.Y.2d 95 (2000) .....20, 23

*Lehrman v. Lovo, Inc.*,
790 F. Supp. 3d 348 (S.D.N.Y. 2025).....18

*Lemerond v. Twentieth Century Fox Film Corp.*,
No. 07 Civ. 4635 (LAP), 2008 WL 918579 (S.D.N.Y. Mar. 31, 2008) .....18

*Lohan v. Perez*,
924 F. Supp. 2d 447 (E.D.N.Y. 2013) .....19

*Lohan v. Take-Two Interactive Software, Inc.*,
31 N.Y.3d 111 (2018) .....11, 12

*Maheshwari v. City of New York*,
2 N.Y.3d 288 (2004) .....20

*Man v. Warner Bros., Inc.*,
317 F. Supp. 50 (S.D.N.Y. 1970) .....14, 15

*Mayer v. Cornell Univ.*,
No. 96-7600, 1997 WL 32916 (2d Cir. Jan. 8, 1997).....21, 22

*Murray v. N.Y. Magazine Co.*,
27 N.Y.2d 406 (1971) .....16

*Myskina v. Condé Nast Publ'ns, Inc.*,
386 F. Supp. 2d 409 (S.D.N.Y. 2005).....19

*Namath v. Sports Illustrated*,
48 A.D.2d 487 (1st Dep't 1975), *aff'd*, 39 N.Y.2d 897 (1976) .....19

*Negri v. Schering Corp.*,
333 F. Supp. 101 (S.D.N.Y. 1971) .....12, 13

*Nesbeth v. N.Y.C. Mgmt., LLC*,
No. 17 Civ. 8650 (JGK), 2019 WL 110953 (S.D.N.Y. Jan. 4, 2019).....10

*Netzer v. Continuity Graphic Assocs., Inc.*,
963 F. Supp. 1308 (S.D.N.Y. 1997)....................13

*Ortiz v. Consol. Edison Co. of N.Y., Inc.*,
801 F.Supp.3d 260 (S.D.N.Y. 2025)....................10

*In re Platinum-Beechwood Litig.*,
427 F. Supp. 3d 395 (S.D.N.Y. 2019)....................10

*Ponessi v. Am. Gold Star Mothers*,
725 F. ....................21

*Porco v. Lifetime Entm't Servs., LLC*,
195 A.D.3d 1351 (3d Dep't 2021)....................17

*Preston v. Martin Bregman Prods., Inc.*,
765 F. Supp. 116 (S.D.N.Y. 1991) ....................13, 14

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
813 F. Supp. 2d 489 (S.D.N.Y. 2011)....................12, 13

*Ritchie v. N. Leasing Sys., Inc.*,
14 F. Supp. 3d 229 (S.D.N.Y. 2014)....................10

*Sommer v. Fed. Signal Corp.*,
79 N.Y.2d 540 (1992) ....................23, 24

*Stephano v. News Grp. Publ'ns, Inc.*,
64 N.Y.2d 174 (1984) ....................17, 19

*Tevdorachvili v. Chase Manhattan Bank*,
103 F. Supp. 2d 632 (E.D.N.Y. 2000) ....................24

*Titan Sports, Inc. v. Comics World Corp.*,
870 F.2d 85 (2d Cir. 1989)....................12

*Vogel v. W. Mountain Corp.*,
97 A.D.2d 46 (3d Dep't 1983) ....................20, 21

*Walsh Ward v. Klein*,
10 Misc. 3d 648 (Sup. Ct. N.Y. Cnty. 2005) ....................17, 19

*Zoll v. Jordache Enters., Inc.*,
No. 01 Civ. 1339 (CSH), 2002 WL 31873461 (S.D.N.Y. Dec. 24, 2002) ....................18

*Zoll v. Jordache Enters. Inc.*,
No. 01 Civ. 1339 (CSH), 2003 WL 1964054 (S.D.N.Y. Apr. 24, 2003) ....................18

**Statutes**

New York Civil Rights Law §§ 50 and 51 .......... *passim*

**Other Authorities**

https://www.youtube.com/watch?v=ACoJ17Pxkfs .......... 9

Fed Rule Civ P. 7.1 .......... 6

Fed Rule Civ P. 8 .......... *passim*

Fed Rule Civ P. 12(b)(6) .......... *passim*

Fed Rule Civ P. 26(f) .......... 6

Defendant Night Media, Inc. ("Night Media") respectfully submits this memorandum of law in support of its motion under Federal Rules of Civil Procedure 8(a) and 12(b)(6) to dismiss the Fourth Amended Complaint (the "Complaint") filed by Plaintiff Caleb Gottfried ("Plaintiff") on October 22, 2026.

## PRELIMINARY STATEMENT

Plaintiff attended a publicly announced open-call audition in Manhattan, waited outdoors on a public sidewalk on a hot June day, and later appeared—partially obscured, for one to three seconds—at the start of a 28-minute YouTube video documenting the event. He now sues Night Media. Yet across five pleadings, Plaintiff has never alleged what Night Media did. The Complaint describes Night Media in a single phrase—"a talent management company"—and attributes every act to an undifferentiated group of "Defendants" that Plaintiff concedes he cannot tell apart. That failure is dispositive: Rule 8 does not permit a plaintiff to sue three entities and leave each to guess what it allegedly did.

The claims also fail on the merits. Count I, under New York Civil Rights Law §§ 50 and 51, fails four times over: by his own account, Plaintiff is not identifiable from the footage; his fleeting appearance in a crowd is incidental to the Video; having come to audition, in person and on camera, for a live-streaming program, he made himself part of the very public event that was recorded; and the Video documents a matter of public interest rather than advertising anything. Counts II and III, for negligence and gross negligence, fail because Night Media—which is not alleged to have organized, staffed, or controlled the event or the public sidewalk where Plaintiff waited—owed him no duty. Plaintiff's theory is akin to a fan who waits overnight outside Madison Square Garden for a team's open tryout, suffers heat exhaustion, and sues the star player's agent.

Plaintiff has amended four times and still cannot state a claim. Further amendment would be futile, and the Complaint should be dismissed with prejudice.

## STATEMENT OF FACTS

For purposes of this motion only, Night Media accepts the Complaint's well-pleaded factual allegations as true.

### I. THE COMPLAINT ALLEGES ALMOST NOTHING ABOUT NIGHT MEDIA

Plaintiff alleges that he is domiciled in New Jersey and uses a Brooklyn, New York address for mail only. Complaint ¶ 6. The Complaint names three defendants: Night Media; Kai Cenat LLC, a New York limited liability company whose sole member is nonparty Kai Cenat; and Kai Cenat LLC, a Georgia limited liability company that has applied to register the "SU STREAMER UNIVERSITY" service mark. *Id.* ¶¶ 7–9, 11, 13. Plaintiff concedes that he "is presently unable to determine, without discovery, which entity or entities organized, promoted, staffed, or directed the June 12, 2026 event and published the video at issue," and he defines "Defendants" as "those Defendants responsible for the conduct alleged." *Id.* ¶ 10.

The only allegations specific to Night Media are that it is "a corporation organized under the laws of the State of Delaware, with its principal place of business in Austin, Texas," that "[i]t is a talent management company," *id.* ¶ 7, and that it "replied the same day" to an email Plaintiff sent after the event asserting claims and requesting preservation of footage, *id.* ¶ 92. The Complaint does not allege that Night Media:

- was Plaintiff's talent manager or had any relationship or communication with him before the event;
- announced, promoted, organized, staffed, or directed the June 12, 2026 event, or set its conditions of attendance, *see id.* ¶¶ 17–19, 31–32;
- owned, leased, occupied, or controlled John Jay College or the public sidewalk where Plaintiff waited, *see id.* ¶¶ 17, 63;
- operated the streameruniversity.com website or received Plaintiff's online application, *see id.* ¶¶ 15, 37;

- employed or directed any camera operator, filmed Plaintiff, or edited the Video, *see id.* ¶¶ 43, 46, 64, 85;
- operated the YouTube channel on which the Video was posted, or published or monetized the Video, *see id.* ¶ 76;
- owns or applied to register the "Streamer University" mark, *see id.* ¶ 11;
- was a party to the University of Akron agreement on which Plaintiff relies, *see id.* ¶ 69; or
- had any involvement in the August 2023 Union Square event, *see id.* ¶¶ 59–61.

## II. THE OPEN-CALL AUDITION ON JUNE 12, 2026

On June 11, 2026, an announcement published on the verified Instagram account @kaicenat and the verified X account @KaiCenat stated that in-person applications for "Streamer University"[1] would be held at 1:00 p.m. the next day at John Jay College of Criminal Justice in Manhattan. *Id.* ¶¶ 18–19. Plaintiff alleges that the event was marketed "as an in-person audition and application opportunity for 'Streamer University,'" and that it was "a process by which persons applied to Defendants for admission to the program Defendants sell." *Id.* ¶¶ 16, 20. Plaintiff "was not invited individually and was not on any list"; he saw the Instagram post and attended "in reliance upon it." *Id.* ¶ 22. He alleges that he attended "for the purpose of applying for admission to that program." *Id.* ¶ 28.

Plaintiff's allegations are internally inconsistent. He alleges that he "learned of the event's date, time, and location from th[e] announcement" posted on June 11, *id.* ¶ 22, and attended to apply for admission, *id.* ¶ 28—yet also that "[o]n or about June 9, 2026, three days before the event," he had already "submitted an online application" through streameruniversity.com, including "a video file of himself." *Id.* ¶¶ 37, 39. He alleges that he "did not attend for the purpose

[1] "Streaming" means broadcasting live video and audio in real time over the internet to the audience, rather than posting pre-recorded videos and a "streamer" is a person who does so. As its name indicates, Streamer University is a program for streamers. An in-person audition for such a program is, by its nature, an event at which attendees expect to be filmed and broadcast.

of being recorded" or "of appearing in any published content," *id.* ¶ 28, and that nothing announced that attendees would be filmed, *id.* ¶ 33—yet also that at approximately 4:00 a.m., "a camera operator was recording interviews with attendees waiting in line," *id.* ¶ 64; that his application form was stamped "while cameras operated by Defendants' agents were recording," *id.* ¶ 43; and that camera operators "filmed an interview-style segment with Plaintiff," *id.* ¶ 46. Plaintiff is, by his own description, "a recording artist and photographer who performs and publishes commercially under the name SNVRK." *Id.* ¶ 102. He "has released commercial musical videos and has published commercial music videos," in which the same high-visibility orange vest he allegedly wore to the audition appears "as a recurring element of his visual presentation." *Id.* ¶¶ 81, 102. Plaintiff was not accepted into the Streamer University program. *Id.* ¶ 45.

## III. <u>PLAINTIFF'S ALLEGED INJURIES</u>

Plaintiff arrived at the open-call audition at approximately 3:30 a.m., waiting outdoors on the public sidewalk, where "metal police barricades were already in place along the line, and roughly ten to twenty police officers were present." *Id.* ¶¶ 52, 63. The building was located on "premises owned by a third party." *Id.* ¶ 17. Plaintiff alleges that the temperature "remained in the mid-seventies overnight," "reached 82°F" at approximately 11:00 a.m., and "reached a high of 92°F that afternoon." *Id.* ¶ 52. He alleges that "[o]n two occasions, at approximately 11:00 a.m., [he] came close to losing consciousness while standing in the crowd," that he "fell" during one episode, and that he "inhaled thick smoke present in the area." *Id.* ¶ 54. He does not allege who or what produced the smoke. An NYPD officer removed Plaintiff from the crowd; "[a]fter sitting for a period, Plaintiff returned to the high-density crowd," remained until approximately 6:00 p.m., and then drove himself home to New Jersey. *Id.* ¶¶ 55–57. He alleges a cough lasting

approximately three days and fatigue lasting approximately one week, and that his cardiologist later assessed his pre-syncope as "likely secondary to dehydration." *Id.* ¶ 58.

## IV. <u>THE VIDEO</u>

On June 20, 2026, a video titled "Streamer University NEW YORK In Person Applications" (the "Video") was posted on YouTube "on a channel operated by or for Defendants." *Id.* ¶ 76. The Video runs 28 minutes and 1 second and documents the June 12 event; its body consists of "interview segments and other recorded material" from the auditions. *Id.* ¶ 78. Plaintiff alleges that he appears in "approximately frames 40 through 96 of 50,369—approximately one to three seconds into the video"—that is, at approximately the 0:01 to 0:03 mark—seated, with a high-visibility vest and a helmet on his lap. *Id.* ¶ 77. His face is "partially obscured—by the brim of the hat he was wearing, by the angle at which he was recorded, and by other persons moving through the frame." *Id.* ¶ 80. He does not speak. He claims to be identifiable only "to those who know him," by "the combination" of his head, build, posture, hat, vest, helmet, and seated position. *Id.* ¶ 81. A still image from the frames in which Plaintiff allegedly appears is reproduced below.




Figure 1: Screen shot of frame 72 where Plaintiff alleges he appears (Compl. ¶¶ 76-77) at approximately 0:01 of the Video. *See* Exhibit A to the Declaration of Christopher J. Stevens.

**PROCEDURAL HISTORY**

On June 26, 2026, Plaintiff, proceeding *pro se*, filed this action against Night Media and Kai Cenat LLC, filing a request to proceed in forma pauperis the same day. ECF Nos. 1-2. The Court granted that application on July 2, 2026. ECF No. 4.

Before any defendant appeared, Plaintiff amended his pleading twice, filing an "Amended Complaint and Demand for Jury Trial" on July 16, 2026. ECF No. 6. Plaintiff then filed a "First Amended Complaint" on July 24, 2026. ECF No. 11. On August 17, 2026, Night Media answered the First Amended Complaint and filed its Rule 7.1 Corporate Disclosure Statement. ECF Nos. 17, 18. Defendant Kai Cenat LLC also appeared, answering both the Amended Complaint and the First Amended Complaint. ECF Nos. 14–16, 19.

On August 26, 2026, the Court set an initial pretrial conference for October 6, 2026. ECF No. 21. On September 7, 2026, Plaintiff filed a letter asking the Court to set a date for the Rule

26(f) conference. ECF No. 22. That same day, Plaintiff also moved for partial summary judgment on Night Media's Thirteenth Affirmative Defense, ECF No. 23, which Night Media opposed on September 21, 2026. ECF No. 33.

On September 17, 2026, Plaintiff moved for leave to file a Second Amended Complaint naming Kai Cenat LLC (New York) and Kai Cenat LLC (Georgia) as separate defendants. ECF Nos. 29–31. On September 22, 2026, with the existing defendants' consent, the Court granted leave and made the Second Amended Complaint the operative pleading. ECF No. 34. Because a new defendant had been added, the Court also adjourned the October 6 initial pretrial conference and denied Plaintiff's motion for partial summary judgment without prejudice as premature, "subject to resolution of any motions to dismiss and renewal after sufficient discovery has been taken." *Id.* On September 25, 2026, the Court directed service on Kai Cenat LLC (Georgia) through the U.S. Marshals Service. ECF No. 43. A summons was issued and the service package was delivered to the Marshals on October 6, 2026. ECF No. 53.

Between late September and mid-October 2026, Plaintiff filed additional applications, including a request for referral to the Court-annexed Mediation Program (ECF No. 44), a request for an evidence-preservation order (ECF No. 45), renewed letter-motions seeking the same relief (ECF Nos. 51, 52), and an application for pro bono counsel (ECF No. 62).

The Court denied the preservation request without prejudice on October 6, 2026, ECF No. 50, and both renewed letter-motions without prejudice on October 7, 2026, ECF Nos. 54-55. The Court also directed Defendants to state their position on mediation, which they did by joint letter on October 12, 2026, ECF Nos. 54, 63, and scheduled a case management conference for November 5, 2026, ECF No. 60.

Plaintiff, however, continued amending his operative pleading. On September 30, 2026, he moved for leave to file a Third Amended Complaint (ECF No. 48), submitting a corrected proposed Third Amended Complaint on October 9, 2026. ECF No. 61. On October 13, 2026, the Court granted Plaintiff leave to file a Third Amended Complaint, which was then filed. ECF Nos. 64-65.

Two days later, on October 15, 2026, Plaintiff moved for leave to file a Fourth Amended Complaint. ECF No. 66. The Court granted Plaintiff's motion for leave and denied Plaintiff's motion for pro bono counsel on October 21, 2026, directing Plaintiff to file the Fourth Amended Complaint by November 2, 2026, adding that "[n]o further amendments should be made at least before the Court holds an initial pretrial conference." ECF No. 68.

Plaintiff filed the Complaint and Demand for Jury Trial on October 22, 2026 (ECF No. 69), which Night Media now moves to dismiss in full and with prejudice.

## APPLICABLE LEGAL STANDARDS

To avoid dismissal under Rule 12(b)(6), a complaint must plead facts stating a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Labels, conclusions, and "threadbare recitals" do not suffice, and the Court disregards conclusory allegations before assessing plausibility. *See Iqbal*, 556 U.S. at 678–79. Allegations made "upon information and belief" must be supported by facts that make the inference plausible. *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 13 (S.D.N.Y. 2020); *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 526–27 (S.D.N.Y. 2013) (dismissing allegations made upon information and belief where nothing was offered to support the belief "but conjecture and speculation"); *see also Evergreen E. Coop. v. Whole Foods Mkt., Inc.*, No. 21-

2827-cv, 2023 WL 545075, at *2 (2d Cir. Jan. 27, 2023); *Auth Token LLC v. City Nat. Bank*, 817 F. Supp. 3d 211, 222 (S.D.N.Y. 2026).

Although the Court construes a *pro se* complaint liberally, that solicitude does not relieve a plaintiff of the obligation to plead facts that state a plausible claim. *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013). The solicitude is particularly limited here: Plaintiff has amended four times, and he attests that he drafted the Complaint with the aid of a generative artificial intelligence tool and "personally verified the existence, text, and current effect of every rule, statute, docket entry, and decision cited." Complaint, Decl. Pursuant to Individual Rule 8 ¶¶ 2–3.

The Court may consider the Video, which the Complaint describes in detail and upon which Count I relies. Complaint ¶¶ 76–86. Review on a Rule 12(b)(6) motion extends to "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits," *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004), and to documents "integral" to the complaint, where the complaint "relies heavily upon [their] terms and effect," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (citation omitted). The Video is publicly available at https://www.youtube.com/watch?v=ACoJ17Pxkfs. Plaintiff alleges that he appears at approximately 0:01 to 0:03. Complaint ¶ 77. A still image captured from those frames is submitted as Exhibit A to the Declaration of Christopher J. Stevens.

## ARGUMENT

The Complaint should be dismissed in full. First, it pleads no conduct by Night Media and impermissibly lumps three defendants together. Second, Count I fails because Plaintiff is not recognizable from the Video, his one-to-three-second appearance is incidental, he voluntarily placed himself before the cameras at a public entertainment event, and the Video addresses a matter

of public interest. Third, Counts II and III fail because Night Media owed Plaintiff no duty as a matter of law.

## I. THE COMPLAINT PLEADS NO CONDUCT BY NIGHT MEDIA AND IMPERMISSIBLY LUMPS THREE DISTINCT DEFENDANTS TOGETHER.

Every claim against Night Media fails at the threshold because the Complaint does not allege that Night Media did anything. Rule 8 requires, "at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (internal quotation marks omitted). A complaint that "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct" fails that standard. *Id.* Indeed, "it is well-established in this Circuit that plaintiffs cannot simply lump defendants together for pleading purposes and that Rule 8 is violated where a plaintiff, by engaging in group pleading, fails to give each defendant fair notice of the claims against it." *Ortiz v. Consol. Edison Co. of N.Y., Inc.*, 801 F.Supp.3d 260, 293 (S.D.N.Y. 2025) (quoting *Nesbeth v. N.Y.C. Mgmt., LLC*, No. 17 Civ. 8650 (JGK), 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019)); *accord In re Platinum-Beechwood Litig.*, 427 F. Supp. 3d 395, 438 (S.D.N.Y. 2019); *Goetz v. Ainsworth Pet Nutrition, LLC*, 768 F. Supp. 3d 645, 652 (S.D.N.Y. 2025); *Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 235 (S.D.N.Y. 2014). Courts thus dismiss claims against a defendant where "the vast majority of allegations relating to [it] are jointly alleged against most of the other Defendants without providing any factual basis to distinguish their conduct." *Farmer v. Cnty. of Westchester*, No. 18 Civ. 2691 (NSR), 2021 WL 4199944, at *6–7 (S.D.N.Y. Sept. 15, 2021).

The Complaint is a textbook example of improper group pleading. Plaintiff concedes that he cannot determine "which entity or entities organized, promoted, staffed, or directed the June 12, 2026 event and published the video at issue," and he defines "Defendants" as "those

Defendants responsible for the conduct alleged." Complaint ¶ 10. That circular definition makes every allegation against "Defendants" an allegation against no one in particular. Plaintiff's invocation of alternative pleading under Rule 8(d)(2), *id.* ¶¶ 10, 14, does not cure the defect: Rule 8(d)(2) permits alternative claims, not a refusal to identify what each defendant did. Nor do Plaintiff's allegations "[u]pon information and belief" that nonparty Kai Cenat "acted for and on behalf of Defendants," *id.* ¶ 13, supply any fact connecting Night Media to the event.

Stripped of group pleading, the Complaint says only two things about Night Media: that it "is a talent management company," *id.* ¶ 7, and that it replied to Plaintiff's post-event preservation email, *id.* ¶ 92. Replying to an e-mail is not tortious conduct. Night Media is not, and is not alleged to be, Plaintiff's talent manager. Every operative fact is tied, if anyone, to someone else: the announcement was posted on Kai Cenat's personal accounts, *id.* ¶ 19; Kai Cenat LLC (Georgia) is the applicant for the "Streamer University" mark, *id.* ¶ 11; Kai Cenat is the sole member of Kai Cenat LLC (New York), *id.* ¶ 13; and the only agreement concerning event operations and recording releases was executed by Kai Cenat LLC, *id.* ¶ 69. Because this is Plaintiff's sixth pleading and he still cannot say what Night Media did, all claims against Night Media should be dismissed with prejudice. *See Atuahene*, 10 F. App'x at 34 (affirming dismissal where plaintiff failed to cure group pleading after several opportunities to amend).

## II. COUNT I FAILS BECAUSE PLAINTIFF IS NOT RECOGNIZABLE AND HIS FLEETING APPEARANCE DOES NOT CONSTITUTE USE FOR ADVERTISING OR TRADE.

There is no common-law right of privacy in New York; Sections 50 and 51 of the New York Civil Rights Law provide the exclusive privacy remedy. *Groden v. Random House, Inc.*, 61 F.3d 1045, 1048-49 (2d Cir. 1995). The statutes "were drafted narrowly to encompass only the commercial use of an individual's name or likeness and no more." *Lohan v. Take-Two Interactive*

*Software, Inc.*, 31 N.Y.3d 111, 120 (2018) (quoting *Arrington v. N.Y. Times Co.*, 55 N.Y.2d 433, 439 (1982)). Courts have therefore "cabined section 51 'to avoid any conflict with the free dissemination of thoughts, ideas, newsworthy events, and matters of public interest' guaranteed by the First Amendment." *Id.* (quoting *Ann-Margret v. High Soc'y Mag., Inc.*, 498 F. Supp. 401, 404 (S.D.N.Y. 1980)). To state a claim, Plaintiff must plead (1) use of his name, portrait, picture, or voice; (2) for advertising or trade; (3) without written consent; (4) within New York. *Titan Sports, Inc. v. Comics World Corp.*, 870 F.2d 85, 87 (2d Cir. 1989).

### A. Plaintiff Does Not Plausibly Allege a Recognizable "Portrait or Picture."

A plaintiff must be "capable of being identified from the advertisement alone," a question that turns on the "quality and quantity of the identifiable characteristics" displayed. *Cohen v. Herbal Concepts, Inc.*, 63 N.Y.2d 379, 384 (1984); *see Lohan*, 31 N.Y.3d at 122. A picture is not actionable unless it is a clear representation of the plaintiff recognizable from the challenged material itself. *Negri v. Schering Corp.*, 333 F. Supp. 101, 103–04 (S.D.N.Y. 1971). Courts therefore reject Section 51 claims where the image does not permit identification. *See Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 557 (S.D.N.Y. 2011) (individuals whose backs were turned to the camera not recognizable).

Plaintiff cannot meet that test. By his own account, his face is "partially obscured" by a hat brim, the camera angle, and "other persons moving through the frame," Complaint ¶ 80, in a clip lasting at most three seconds, *id.* ¶ 77. He admits he is identifiable only "to those who know him," by a "combination" of a branded hat, a high-visibility vest, a helmet, his build, and his seated posture. *Id.* ¶ 81. Those are clothing and generic attributes, not identifying features. And the frame, shot from above street level, shows hundreds of people in a high-density line behind metal

barricades on the sidewalk outside John Jay College. *See infra* Figure 1. At that distance and in that crowd, no one is recognizable.

*Cohen* is not to the contrary: there, the plaintiffs were the central subject of a still advertisement that a viewer could study at leisure, 63 N.Y.2d at 384–85; here, Plaintiff appears for a few seconds of moving footage, partially obscured and surrounded by hundreds of others. *Compare Negri*, 333 F. Supp. at 104 (full-length likeness whose features were "quite clear and characteristic"), *with Pure Power Boot Camp*, 813 F. Supp. 2d at 557. Nor can Plaintiff rely on his clothing: evoking a person's attire, without a recognizable likeness of the person himself, is not actionable. *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 454 (S.D.N.Y. 2008). Indeed, Plaintiff's reliance on third-party press coverage to place him at the event, Complaint ¶ 82, confirms that he cannot be identified from the Video alone—as the frames reproduced above make plain.

**B. Plaintiff's Fleeting Appearance Is Incidental to the Video.**

The "incidental use" of a person's likeness "falls outside the prohibition of the statute." *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F. Supp. 1308, 1326 (S.D.N.Y. 1997). Penalizing every unauthorized use, "no matter how insignificant or fleeting," would burden expressive activity in ways the Legislature never intended. *Preston v. Martin Bregman Prods., Inc.*, 765 F. Supp. 116, 120 (S.D.N.Y. 1991). Liability therefore requires "a relatively direct and substantial connection between the appearance of the plaintiff's name or likeness and the main purpose and subject of the work." *Netzer*, 963 F. Supp. at 1326 (citation omitted); *see Delan v. CBS, Inc.*, 91 A.D.2d 255, 260 (2d Dep't 1983); *De Gregorio v. CBS, Inc.*, 123 Misc. 2d 491, 494 (Sup. Ct. N.Y. Cnty. 1984).

The main subject of the Video is the June 12 open-call audition and Kai Cenat's interviews with applicants. Plaintiff is not among the applicants interviewed in the Video; he allegedly

appears "before the interview segments and other recorded material that constitute the body of the video begin." Complaint ¶ 78. He appears for one to three seconds of a street-level crowd shot in a 28-minute video, does not speak, and is not featured, discussed, or presented as endorsing anything. *Id.* ¶¶ 77–78, 80. Courts routinely reject Section 51 claims premised on longer and more prominent appearances. *See Khozissova v. Ralph Lauren Corp.*, 228 A.D.3d 508, 510 (1st Dep't 2024) (affirming motion to dismiss where model appeared for 38 seconds of a 108-minute documentary and one second of a 90-second trailer distributed on cable and internet streaming services); *Preston*, 765 F. Supp. at 119–20 (plaintiff shown fleetingly in a street scene during a film's opening credits that merely set the New York scene); *Delan*, 91 A.D.2d at 260 (four-second appearance in documentary about institutionalization of the mentally ill); *Diokhane v. 57th & Irving, Inc.*, 2009 N.Y. Slip Op. 30381(U), 2009 WL 497309, at *8-9 (Sup. Ct. N.Y. Cnty. Feb. 18, 2009) (nine seconds in a film over an hour and a half long was "fleeting" and "might well be overlooked by the passive viewer"); *De Gregorio*, 123 Misc. 2d at 494 (five-second appearance in ten-minute news segment); *Man v. Warner Bros., Inc.*, 317 F. Supp. 50, 53 (S.D.N.Y. 1970) (use of forty-five-second performance in film of Woodstock festival was "surely de minimus").

Plaintiff's allegation that his image was deliberately "placed at the opening of the video," and that "Defendants could have omitted him," Complaint ¶¶ 79, 85, changes nothing. Every editorial choice is deliberate. The question is how the plaintiff's appearance relates to the main purpose and subject of the work, and choices about how to depict an event of public interest are "better left to reasonable editorial judgment and discretion." *Finger v. Omni Publ'ns Int'l, Ltd.*, 77 N.Y.2d 138, 143 (1990) (citation omitted). The footage shows that the choice was to depict the crowd of applicants lined up for a chance at Streamer University—not Plaintiff. Being incidentally captured in a crowd shot is not a cause of action.

### C. Plaintiff Voluntarily Made Himself Part of a Public Event and Therefore Cannot Now Claim that His Privacy was Invaded.

Plaintiff's voluntary placement of himself before cameras at a public entertainment event independently warrants dismissal. The Court of Appeals has long held that "one attending a public event . . . may expect to be televised in the status in which he attends," and that "[w]here . . . one is a public personage, an actual participant in a public event, or where some newsworthy incident affecting him is taking place, the right of privacy is not absolute, but limited." *Gautier v. Pro-Football, Inc.*, 304 N.Y. 354, 360 (1952). In *Gautier*, the animal trainer's contract provided that his act would not be televised without written consent, and he objected to the broadcast; yet by "appearing between the halves, and voluntarily occupying the very center of attraction for several minutes," he had "bec[o]me a part of the spectacle as a whole," and "it can hardly be said that his right of privacy was invaded." *Id. Gautier* "remains good law," and this Court has applied it to dismiss privacy claims arising from entertainment spectacles at the pleading stage. *Cummings v. Soul Train Holdings LLC*, 67 F. Supp. 3d 599, 604 (S.D.N.Y. 2014) (plaintiff "consented to perform live on national television"); *Man*, 317 F. Supp. at 53 (musician who performed at Woodstock placed himself in the spotlight of a public event).

So too here. Plaintiff did not stumble into the camera's path. He traveled to Manhattan for a publicly announced, open-call, in-person audition for Streamer University—a program for people who broadcast themselves live to online audiences. Complaint ¶¶ 13, 18–20, 22. He had already applied online by uploading "a video file of himself," *id.* ¶¶ 37, 39; waited for hours in a crowd large enough to draw press coverage, *id.* ¶¶ 52, 62–63, 82; presented his application to Kai Cenat "while cameras operated by Defendants' agents were recording"; and then sat for "an interview-style segment" with camera operators, *id.* ¶¶ 43, 46. Having sought an on-camera audition for a streaming program, Plaintiff cannot complain that he was recorded. *See Gautier*,

304 N.Y. at 360 (rejecting claim notwithstanding express contractual promise that plaintiff's act would not be televised).

Plaintiff's own career confirms that he invites public attention. He alleges that he is "a recording artist and photographer who performs and publishes commercially under the name SNVRK," a registered mark that purportedly identifies him; that he "has released commercial musical works and has published commercial music videos"; and that the high-visibility orange vest he wore to the audition is "a recurring element of his visual presentation" in those videos. Complaint ¶¶ 81, 102. Having courted public attention, Plaintiff cannot recast his fleeting appearance at a public event he voluntarily attended as an invasion of privacy. *See Estate of Hemingway v. Random House, Inc.*, 23 N.Y.2d 341, 352 (1968) ("once a person has sought publicity he cannot at his whim withdraw the events of his life from public scrutiny") (citation omitted). Courts have likewise recognized that a person who voluntarily seeks the spotlight at a public event cannot later complain when he is captured in footage documenting it. *See Diokhane*, 2009 WL 497309, at *8-9 (plaintiff's voluntary appearance at a press conference, "[t]hough [it] does not waive his right to privacy outright, . . . limits it in this context") (citing *Murray v. N.Y. Magazine Co.*, 27 N.Y.2d 406, 409 (1971)).

### D. In Any Event, the Video Concerns a Matter of Public Interest and Is Not an Advertisement in Disguise.

Even if Plaintiff's appearance were more than incidental, Count I would fail because the Video is a non-commercial work documenting an event of public interest, as the crowd it drew confirms. That the Video may also generate interest in Streamer University does not change the result: New York courts look to the content of the work, not the creator's motive, and have dismissed Section 51 claims arising from documentaries that generated publicity for their subjects.

**1. The Event Was a Matter of Public Interest.**

Sections 50 and 51 "do not apply to reports of newsworthy events or matters of public interest," which as a matter of law are "not deemed produced for the purposes of advertising or trade." *Messenger v. Gruner + Jahr Printing & Publ'g*, 94 N.Y.2d 436, 441 (2000); *see Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 123 (1993); *Stephano v. News Grp. Publ'ns, Inc.*, 64 N.Y.2d 174, 184 (1984). Newsworthiness is broadly construed and "includes not only descriptions of actual events," but also "political happenings, social trends or any subject of public interest." *Porco v. Lifetime Entm't Servs., LLC*, 195 A.D.3d 1351, 1353 (3d Dep't 2021) (quoting *Messenger*, 94 N.Y.2d at 441–42) (noting that artistic expression, "whether intended as entertainment or not," can be newsworthy). Courts therefore dismiss Section 50 and 51 claims at the pleading stage on newsworthiness grounds. *See Khozissova*, 228 A.D.3d at 509-10 (affirming pre-answer dismissal where model's images were used in documentary); *Walsh Ward v. Klein*, 10 Misc. 3d 648, 653-54 (Sup. Ct. N.Y. Cnty. 2005) (dismissing claim based on use of plaintiff's image in documentary); *Gastineau v. ESPN Inc.*, No. 25 Civ. 2041 (PAE), 2026 WL 734841, at *9 (S.D.N.Y. Mar. 16, 2026); *Hollander v. Pressreader, Inc.*, No. 19-CV-2130 (AJN), 2020 WL 2836189, at *5 (S.D.N.Y. May 30, 2020).

The Complaint itself pleads the event's public interest: attendees began lining up at 8:00 p.m. the night before, the crowd required police barricades and a substantial police presence, and the event was covered by "third-party press media." Complaint ¶¶ 19, 62–63, 82. The Video documents that event, including interviews with participants and footage of auditions. *Id.* ¶ 78. Courts consistently treat comparable subject matter, including documentaries and coverage of entertainment and popular culture, as newsworthy. *See Walsh Ward*, 10 Misc. 3d at 653 (documentary about rock band); *Alfano v. NGHT, Inc.*, 623 F. Supp.2d 355, 360–61 (E.D.N.Y.

2009) (documentary about organized crime); *Zoll v. Jordache Enters., Inc.*, No. 01 Civ. 1339 (CSH), 2002 WL 31873461, at *14 (S.D.N.Y. Dec. 24, 2002) (reports on developments in the fashion world).

**2. Plaintiff's Image Bears a Real Relationship to the Video.**

A claim lies for use in a work of public interest only if "the picture has no real relationship to the article or the article is an advertisement in disguise." *Diokhane*, 2009 WL 497309, at *8-9 (quoting *Messenger*, 94 N.Y.2d at 442–43). Plaintiff concedes the real relationship: he attended the very event the Video documents and appears as one of "the attendees whose presence constitutes the demand the video exists to display." Complaint ¶¶ 22, 86. The requirement is not demanding. In *Finger*, the Court of Appeals found a real relationship between an article about in vitro fertilization and a photograph of a large family, even though none of the plaintiffs' children had been conceived through that procedure. 77 N.Y.2d at 142–43. The relationship here is far more direct. *See Alfano*, 623 F. Supp. 2d at 360–61 (photograph of plaintiff outside courthouse during Gotti trial sufficiently related to documentary about organized crime); *Lemerond v. Twentieth Century Fox Film Corp.*, No. 07 Civ. 4635 (LAP), 2008 WL 918579, at *3 (S.D.N.Y. Mar. 31, 2008).

**3. The Video Is Not an Advertisement in Disguise.**

Nor does Plaintiff plausibly allege that the Video is an "advertisement in disguise." He does not allege that the Video promotes any product or service for sale, or that it urges viewers to buy anything. *See Burgin v. Nat'l Football League*, No. 13 Civ. 8166 (KBF), 2014 WL 1760112, at *3 (S.D.N.Y. Apr. 30, 2014); *Lehrman v. Lovo, Inc.*, 790 F. Supp. 3d 348, 383 (S.D.N.Y. 2025). The exception is narrowly construed. *Zoll v. Jordache Enters. Inc.*, No. 01 Civ. 1339 (CSH), 2003 WL 1964054, at *9 (S.D.N.Y. Apr. 24, 2003). And a conclusory assertion that an image was used

for trade does not suffice. *Myskina v. Condé Nast Publ'ns, Inc.*, 386 F. Supp. 2d 409, 419 (S.D.N.Y. 2005); *Abdelrazig v. Essence Commc'ns, Inc.*, 225 A.D.2d 498, 498 (1st Dep't 1996).

Plaintiff's real theory—that the Video is "promotional" content for the Streamer University program, Complaint ¶¶ 83–84—fails as a matter of law. "[I]t is the content of the [publication] and not the defendant's motive or primary motive to increase circulation which determines whether it is a newsworthy use, as opposed to a trade usage, under the Civil Rights Law." *Stephano*, 64 N.Y.2d at 185. Applying that rule, *Walsh Ward* dismissed a Section 51 claim arising from a documentary about a rock band, holding that the program's having "created media exposure for [the band's frontman] and his band is not relevant" where nothing in it was "used as a vehicle to promote [his] music or merchandise." 10 Misc. 3d at 654. So too here: the Video documents the audition; it sells nothing. A documentary also remains non-commercial despite advertisements aired with it, *see Delan*, 91 A.D.2d at 259, so the pre-roll advertisement Plaintiff saw, Complaint ¶ 76, is irrelevant. And the exception does not depend on the publisher being a news organization; promotion of a protected work shares the work's protection. *Groden*, 61 F.3d at 1049–51; *Cummings*, 67 F. Supp. 3d at 605 (promotional materials, including "YouTube videos, and websites," for protected work not actionable) (citing *Namath v. Sports Illustrated*, 48 A.D.2d 487 (1st Dep't 1975), *aff'd*, 39 N.Y.2d 897 (1976)); *see also Herink v. Harper & Row Publishers, Inc.*, 607 F. Supp. 657, 660 (S.D.N.Y. 1985); *Lohan v. Perez*, 924 F. Supp. 2d 447, 455 (E.D.N.Y. 2013).

Plaintiff's demand for exemplary damages, which Section 51 permits only where the defendant "knowingly" used the plaintiff's likeness, fails for an additional reason. Plaintiff concedes that the Streamer University website contained a Frequently Asked Questions section stating that "portions of the event may be streamed or recorded" and that attendance constituted

consent to appearing in that content. Complaint ¶ 90. Night Media does not rely on that disclosure as written consent for purposes of this motion, but it forecloses any plausible inference that the event's organizers knowingly used Plaintiff's likeness without consent. *See id.* ¶ 101; N.Y. Civ. Rights Law § 51.

For each of these reasons, Count I should be dismissed with prejudice.

## III. COUNT II FAILS BECAUSE IT DOES NOT PLEAD A COGNIZABLE DUTY OWED BY NIGHT MEDIA OR A BREACH PROXIMATELY CAUSING INJURY.

To state a claim for negligence under New York law, a plaintiff must allege (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) injury proximately resulting from that breach. *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000). The existence and scope of a duty is a question of law for the Court. *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 289 (2001). "Without a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." *Lauer v. City of New York*, 95 N.Y.2d 95, 100 (2000). And foreseeability does not create a duty; it "merely determines the scope of the duty once the duty is determined to exist." *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 220 (S.D.N.Y. 2019) (quoting *Maheshwari v. City of New York*, 2 N.Y.3d 288, 294 (2004)). Applying these principles, courts have rejected negligence claims by event attendees against sponsors, promoters, and performers who did not control the premises or the safety of the event. *See id.* at 220-21 (dismissing negligence and gross negligence claims by festival attendees); *Vogel v. W. Mountain Corp.*, 97 A.D.2d 46, 47-48 (3d Dep't 1983) ("mere sponsorship, absent control," does not render a sponsor "legally responsible"); *Giovacco v. Graham*, 213 A.D.3d 523, 524 (1st Dep't 2023); *Collins v. Resto*, 746 F. Supp. 360, 362 (S.D.N.Y. 1990). The Second Circuit has likewise held that a sponsor is not "liable in negligence for an injury

caused to an event participant if the sponsor has no control over the event and thus is in no position to be able to prevent the injuries." *Mayer v. Cornell Univ.*, No. 96-7600, 1997 WL 32916, at *3 (2d Cir. Jan. 8, 1997).

Night Media owed Plaintiff no duty. The Complaint alleges only that Night Media is "a talent management company." Complaint ¶ 7. It does not allege that Night Media was Plaintiff's talent manager, that it had any relationship or communication with Plaintiff before the event, or that it planned, staffed, operated, or had any authority over the event or those who ran it. *See supra* Point I. The only written agreement the Complaint pleads concerning event operations was executed by Kai Cenat LLC, Complaint ¶ 69, and its Union Square allegations concern nonparty Kai Cenat, *id.* ¶¶ 59–61. Plaintiff was, at most, one member of the general public who "was not invited individually and was not on any list." *Id.* ¶ 22. A duty arising from a special relationship "does not extend to members of the general public." *532 Madison*, 96 N.Y.2d at 289. Courts thus decline to impose a duty on an entity that neither planned nor operated an event and never exercised custody or control over the plaintiff. *See Vogel*, 97 A.D.2d at 48; *Ponessi v. Am. Gold Star Mothers*, 725 F. Supp. 201, 202 (S.D.N.Y. 1989); *A.B. v. Staropoli*, 929 F. Supp. 2d 266, 293–94 (S.D.N.Y. 2013).

Nor did any defendant control the place where Plaintiff fell ill. The building was located on "premises owned by a third party." Complaint ¶ 17. Plaintiff's symptoms arose at around 11:00 a.m. while he was waiting outdoors in the public line, before he entered the building. *Id.* ¶¶ 52, 54, 66. The sidewalk was policed by the NYPD with metal barricades. *Id.* ¶ 63. "[L]iability for a dangerous or defective condition on property is generally predicated upon ownership, occupancy, control or special use of the property," and where none is present, "a party cannot be held liable." *Battaglia v. Town of Bethlehem*, 46 A.D.3d 1151, 1154 (3d Dep't 2007) (citation omitted); *see*

*Paden v. Brooklyn Museum* of *Arts*, 226 A.D.3d 920, 921 (2d Dep't 2024); *Blech v. W. Park Presbyterian Church*, 97 A.D.3d 443, 443–44 (1st Dep't 2012). The Complaint pleads no facts showing that any defendant—let alone Night Media—owned, occupied, controlled, or made special use of the public sidewalk. And the conditions Plaintiff describes—summer heat and "thick smoke present in the area"—are not alleged to have been created by any defendant. Complaint ¶¶ 52, 54. Plaintiff chose to endure them, arriving at 3:30 a.m. and waiting for hours with full knowledge of the conditions. *Id.* ¶ 52; *see Benson v. IT & LY Hairfashion, NA, Inc.*, 94 A.D.3d 932, 932-33 (2d Dep't 2012).

Plaintiff's theory is like that of a fan who waits overnight outside Madison Square Garden for a team's open tryout, suffers heat exhaustion, and sues the star player's agent. The agent owes the fan no duty: it did not own the sidewalk or the arena, run the tryout, or control the line. So too here. Night Media is alleged to be nothing more than "a talent management company," Complaint ¶ 7; it is not alleged to have owned or controlled John Jay College or the sidewalk, run the audition, or controlled the line. *See id.* ¶¶ 17, 63; *supra* Point I. New York law imposes no duty on so remote a party.

Plaintiff's theory that Night Media failed to aid him, arrange transport, or prevent him from re-entering the crowd, Complaint ¶¶ 54–56, fares no better. There is generally no affirmative duty to come to another's aid, and a duty is assumed only where the defendant's conduct placed the plaintiff in a more vulnerable position than he would have been in had the defendant done nothing. *Mayer*, 1997 WL 32916, at *3; *Carley v. Theater Dev. Fund*, 22 F. Supp. 2d 224, 229 (S.D.N.Y. 1998). The Complaint alleges no conduct by Night Media that left Plaintiff worse off. Nor does being one of a general class of members of the public establish a special relationship. *See Fyre Festival*, 399 F. Supp. 3d at 219 (no special relationship where defendants had no dealings with

any specific ticketholder); *cf. Bynum v. Camp Bisco, LLC*, 135 A.D.3d 1060, 1061-62 (3d Dep't 2016) (no special duty to festival attendee who had no direct contact with defendants).

Plaintiff also fails to plead causation. Night Media is not alleged to have caused the "thick smoke," the weather, or any other condition Plaintiff describes. Complaint ¶ 54. Plaintiff's own cardiologist attributed his symptoms to dehydration, *id.* ¶ 58, and Plaintiff chose to return to "the high-density crowd" after the NYPD removed him from it, *id.* ¶ 56. Nothing links Plaintiff's alleged injury to any act or omission of Night Media. *See Fontaine v. Ryan*, 849 F. Supp. 190, 203–04 (S.D.N.Y. 1993). Count II should therefore be dismissed with prejudice.

## IV. COUNT III FAILS BECAUSE THE NEGLIGENCE CLAIM FAILS AND THE COMPLAINT PLEADS NO RECKLESS CONDUCT BY NIGHT MEDIA.

Gross negligence "differs in kind, not only degree," from ordinary negligence; it is conduct that "evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 554 (1992); *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 81 N.Y.2d 821, 823–24 (1993). A gross negligence claim survives a motion to dismiss only if the plaintiff alleges facts plausibly suggesting such conduct. *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 59 (2d Cir. 2012). And because gross negligence requires every element of ordinary negligence, including a duty, it fails where the negligence claim fails. *See Lauer*, 95 N.Y.2d at 100; *Farash v. Continental Airlines, Inc.*, 574 F. Supp. 2d 356, 368 (S.D.N.Y. 2008).

Count III fails for the same reasons as Count II, and for an independent one: it pleads no conduct approaching recklessness. Count III merely restates Count II with the label "reckless disregard" added. *Compare* Complaint ¶¶ 111–113 *with id.* ¶¶ 106–108. Its operative allegation—that Defendants "consciously disregarded a known and serious risk of physical harm" and that "[t]heir conduct evinced a reckless disregard for the rights and safety of others," *id.* ¶ 113—simply

recites the *Sommer* standard. A gross negligence claim may not proceed "simply because the plaintiff has added a conclusory allegation of gross negligence to a cause of action." *Am. Auto. Ins. Co. v. Rest Assured Alarm Sys., Inc.*, 786 F. Supp. 2d 798, 807–08 (S.D.N.Y. 2011) (citation omitted); *see also Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 664 (E.D.N.Y. 2000). Indeed, even festival attendees who alleged that they were left without adequate food, water, shelter, security, or medical supervision could not state a gross negligence claim. *Fyre Festival*, 399 F. Supp. 3d at 220.

Nor does the Complaint plead facts showing that Night Media knew of, let alone consciously disregarded, any risk. Plaintiff's theory of knowledge rests on the August 2023 Union Square giveaway, which he attributes to nonparty Kai Cenat, Complaint ¶¶ 59–60, while conceding that he "does not allege that Defendants acted wrongfully on that occasion," *id.* ¶ 61. Night Media is not alleged to have had any role in that event. *See supra* Point I. The remaining allegations of knowledge and inaction are pleaded "upon information and belief" against undifferentiated "Defendants," Complaint ¶¶ 65, 111–112, and rest on what Plaintiff "did not observe," *id.* ¶ 66. They cannot support the heightened showing gross negligence requires. *[CITE]*. The Complaint's own facts refute any inference of indifference: "metal police barricades were already in place along the line," "roughly ten to twenty police officers were present," *id.* ¶ 63, and an NYPD officer removed Plaintiff from the crowd when he fell ill, *id.* ¶ 55. That Plaintiff then "returned to the high-density crowd," *id.* ¶ 56, was his choice—not reckless conduct by Night Media.

Count III should therefore be dismissed with prejudice, together with the demand for punitive damages, which Plaintiff seeks only on Count III. Complaint, Prayer for Relief ¶ F.

## CONCLUSION

For the reasons stated above, Night Media respectfully requests that the Court dismiss the Complaint in its entirety, and in particular:

1. All claims against Night Media, with prejudice, because the Complaint pleads no conduct by Night Media and impermissibly lumps the defendants together in violation of Rule 8;

2. Count I (N.Y. Civ. Rights Law §§ 50–51), with prejudice, because Plaintiff is not recognizable from the footage, his fleeting appearance is incidental, he voluntarily made himself part of a public event, and the Video concerns a matter of public interest and is not a use for advertising or trade;

3. Count II (negligence), with prejudice, because Night Media owed Plaintiff no duty and the Complaint pleads no breach proximately causing injury; and

4. Count III (gross negligence) and the demands for punitive and exemplary damages, with prejudice, because the Complaint pleads no conduct approaching reckless or intentional wrongdoing.

Because Plaintiff has amended four times and further amendment would be futile, dismissal should be without leave to replead. Night Media also requests such other and further relief as the Court deems just and proper.

Dated: November 25, 2026
Boston, Massachusetts

**NIXON PEABODY LLP**

By: */s/ Morgan C. Nighan*
Morgan C. Nighan, Esq.
Exchange Place
53 State Street
Boston, MA 02109
Telephone: (617) 345-1000
mnighan@nixonpeabody.com

Christopher J. Stevens
677 Broadway, 10th Floor
Albany, NY 12207
Telephone: (518) 427-2650
cstevens@nixonpeabody.com

*Attorneys for Defendant*
*Night Media*