**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CALEB GOTTFRIED,<br><br>Plaintiff,<br><br>-against-<br><br>NIGHT MEDIA, INC., KAI CENAT LLC (a New York limited liability company), and KAI CENAT LLC (a Georgia limited liability company),<br><br>Defendants. | Civil Action No.<br>1:26-cv-05471 (DEH) (RWL) |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT NIGHT MEDIA, INC.'S MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT [ECF No. 94]**




Kai Cenat: **"We own the IP of Streamer University."** Still from Twitch VOD, twitch.tv/videos/2468531436, at 00:11:56 (broadcast May 25, 2025). (FAC ¶ 12.) Statement of Kai Cenat LLC's sole member (ECF No. 15); *see* Fed. R. Evid. 801(d)(2)(D). The Kai Cenat Defendants allege "contractual agreement(s)" with Night Media "regarding the subject event." (ECF No. 86.) Night Media denies any role. (ECF No. 18, 9th Aff. Def.)

Caleb Gottfried
*Plaintiff pro se*
5504 13th Ave, Unit #330
Brooklyn, New York 11219
(363) 888-6743
snvrk@snvrkotics.com

## OPENING EPIGRAPHS & COMPARISONS

| Night Media's defense (ECF No. 18) | The record and the law |
|---|---|
| "[N]ot a proper defendant because it did not organize, promote, control, staff, or direct the June 12, 2026 event." (9th Aff. Def.) | Its co-defendants: "contractual agreement(s) in effect between the answering defendant and codefendant regarding the subject event." (ECF No. 86.) |
| "Plaintiff consented, expressly and/or impliedly . . . ." (13th Aff. Def.) | The statute requires "the written consent" of the person. N.Y. Civ. Rights Law § 50. |
| Any use is "protected under the newsworthiness and/or public interest exceptions." (15th Aff. Def.) | The exception does not reach "an advertisement in disguise." *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 440 (1982). |
| "Night Media owed no legal duty to Plaintiff." (10th Aff. Def.) | Whoever controls the premises owes reasonable care. *Basso v. Miller*, 40 N.Y.2d 233, 241 (1976). |

1. **"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'"**
   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted) — Justice Souter, May 21, 2007
2. **"Of course, a Civil Rights Law claim may lie if a plaintiff's picture is used purely for trade purposes, and not in connection with a newsworthy article."**
   *Messenger v. Gruner + Jahr Printing & Publ'g*, 94 N.Y.2d 436, 444 (2000) (per curiam) (citation omitted) — Court of Appeals, Feb. 17, 2000
3. **"[A] commercial advertiser . . . may not unilaterally neutralize or override the long-standing and significant statutory privacy protection by wrapping its advertising message in the cloak of public interest, however commendable the educational and informational value."**
   *Beverley v. Choices Women's Med. Ctr., Inc.*, 78 N.Y.2d 745, 752 (1991) — Judge Bellacosa, Dec. 23, 1991
4. **"If a mere spectator, he may be taken as part of the general audience, but may not be picked out of a crowd alone, thrust upon the screen and unduly featured for public view."**
   *Gautier v. Pro-Football, Inc.*, 304 N.Y. 354, 360 (1952) — Judge Froessel, July 15, 1952
   *Note:* Plaintiff appears in the video's opening shot. He alleges he was placed there as the video's retention hook (FAC ¶¶ 77–79, 85).
5. **"Whether an image or avatar is a 'portrait' because it presents a 'recognizable likeness' typically is a question for a trier of fact."**
   *Lohan v. Take-Two Interactive Software, Inc.*, 31 N.Y.3d 111, 122 (2018) — Judge Fahey, Mar. 29, 2018
6. **"[T]he applicability of the exception is an issue of fact for the jury."**
   *Doe v. Darien Lake Theme Park & Camping Resort, Inc.*, 277 A.D.2d 967, 967 (4th Dep't 2000) (mem.) — Appellate Division, Fourth Department, Nov. 13, 2000

7. **“A document filed pro se is ‘to be liberally construed,’ and ‘a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.’”**
*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citations and internal quotation marks omitted) — Supreme Court, June 4, 2007
8. **“[T]he court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.”**
*Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)) — Judge Robert D. Sack, July 28, 2000

---

**Key evidence (a selection)**


Kai: “We own the IP” (Ex. G)


Their form: “memorable on camera?” (Ex. N)


Stamped “STAY IN TOUCH” (Ex. C)


Their video’s opening shot (Ex. A)


Same vest, March 2026 (Ex. O)


TMZ, June 12 (Ex. E)


Crowd, 40+ minutes late (Ex. J)


Online application: no release (Ex. K)

---

**Defendant’s position**
**“…claims that have no legal merit.”**
— Night Media, Inc., letter of Christopher J. Stevens, Esq., Nov. 20, 2026 (ECF No. 91 at 2); *see* Fed. R. Evid. 201(b) (court’s own docket)
On what it said at the conference: **“neither testimony nor evidence.”**
— Night Media, Inc., letter (ECF No. 80); *see* Fed. R. Evid. 201(b)
Its CEO: **“we’re trying to quantify how many impressions happened across TikTok.”**
— Reed Duchscher, AvA LIVE (July 30, 2026), at 24:44

**Plaintiff’s position**
**“Looks like there’s some merit to me.”**
— Plaintiff, memorandum of Caleb Gottfried, *pro se*, Nov. 25, 2026 (this filing at ii)

**Night Media contradiction population count: 5 in 5 months** (since filing, ECF No. 1; *see* Fed. R. Evid. 201(b)). Two arise across filings: ECF No. 18 ¶¶ 10–11 vs. ECF Nos. 79, 80 and vs. ECF No. 86. Three arise within one pleading, ECF No. 18: ¶¶ 10–11, 25, 31 & 9th Aff. Def. vs. 13th & 15th Aff. Defs. The three within one pleading may be permitted alternatives, *see* Fed. R. Civ. P. 8(d)(3); the two across filings are not.

**Night Media's brief leaves a citation blank.** Where a case should be, it says "[CITE]." (ECF No. 95 at 24.) The same brief says Plaintiff deserves less leeway because he used AI, which he disclosed as Individual Rule 8 requires. (*Id.* at 9.) Following that rule should not cost him.




**Figure 1.** Cumulative contradictions in Night Media's positions, by date first appearing on the docket. A visual aid and a joke. Sources: ECF Nos. 1, 18, 79, 80, 86; event dates from FAC ¶¶ 16, 18. Illustrative aid, not evidence, Fed. R. Evid. 107.




**Figure 2.** Projected contradiction population through 2028. Points through November 2026 are from the docket; the dotted lines are estimates, not data, and the true figure is unknown (???). The projection assumes only that Night Media can delay discovery for two years. Illustrative only. Fed. R. Evid. 107.

*No contradictions were harmed in the making of these charts; all were filed voluntarily.*

*Shoutout to the Advisory Committee on Evidence Rules for Fed. R. Evid. 107.*

## PLAINTIFF'S NOTE TO THE COURT REGARDING DECORUM

**1. A legal grey area: whether humor aimed only at an opponent's litigation positions, and kept separate from legal argument, is proper in a brief.** Plaintiff found no case answering the question, and the First Amendment does not, because in the courtroom "whatever right to 'free speech' an attorney has is extremely circumscribed." *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1071 (1991). *Only case law can.* Plaintiff does not ask the Court to resolve it on this motion.

**2. Why the humor.** The preceding pages use humor to frame the issues, not to replace argument.

**3. No disrespect intended.** Plaintiff takes this action and his obligations under Fed. R. Civ. P. 11 seriously, and *intends no disrespect to the Court, opposing counsel, or any party*. Courts discipline or admonish rhetoric aimed at people, not positions. *See In re Abbott*, 925 A.2d 482 (Del. 2007) (briefs disparaging a tribunal); *United States v. Venable*, 666 F.3d 893 (4th Cir. 2012) (brief calling a defendant a "charlatan"). *The humor here targets only Defendants' positions in their own filings.*

**4. Everything can be checked.** Each joke in these pages points to a quotation, citation, or docket entry that can be verified. An objection to the humor is therefore an objection to the record. If the figures do not help, Plaintiff asks only that they be disregarded; if they do, *most of the underlying data came from Defendants' own filings*.

**5. What matters most.** Either way, Plaintiff asks that the Court address the contradictions these pages document, *which are not a joke*.

**6. What follows.** The memorandum that follows *rests on the law and the record alone*. Everything in it can be trusted: Plaintiff personally selected most of the cases it cites, and personally read and confirmed every one. Plaintiff files these pages with full confidence in the process: that the Court will read past the humor to the law, and decide this motion on its merits. Without further ado…

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1
STATEMENT OF ALLEGED FACTS ..... 2
STANDARD OF REVIEW ..... 4
ARGUMENT ..... 5
I. PLAINTIFF WAS NOT A PASSERBY: DEFENDANTS SOLICITED HIS ATTENDANCE, ON PREMISES THEY CONTROLLED, TO TRANSACT WITH THEM. ..... 5
A. Plaintiff attended because Defendants advertised for his attendance. ..... 5
B. Plaintiff stood in a pre-existing transactional relationship with Defendants when they filmed him. ..... 6
C. The rule the Court may state, and why it decides this case without unsettling any other. ..... 6
II. THE NEWSWORTHINESS EXEMPTION DOES NOT REACH AN ADVERTISEMENT FOR A PAID PROGRAM. ..... 7
A. Content controls, and the content of this work is promotional. ..... 7
B. A commercial actor may not borrow the public interest. ..... 8
C. Arrington forecloses the argument at the pleading stage. ..... 9
III. THE INCIDENTAL USE DOCTRINE DOES NOT REACH A COMMERCIAL PROMOTER'S ADVERTISEMENT FOR ITS OWN PAID PROGRAM. ..... 9
A. The doctrine measures contribution to a work's purpose, not duration. ..... 9
B. Booth marks the boundary, and Defendants fall outside it. ..... 10
C. The Second Circuit has stated what drives the exception, and it is not present here. ..... 10
D. The Venture's operator treated releases as required, and said so in writing. ..... 11
IV. IN THE ALTERNATIVE, PLAINTIFF'S IMAGE BEARS PARTICULAR SIGNIFICANCE TO THE MAIN PURPOSE OF THE WORK. ..... 11
V. EACH STATUTORY ELEMENT IS PLAUSIBLY ALLEGED. ..... 13
A. Usage and identifiability. ..... 14
B. Absence of written consent. ..... 15
VI. THE CLAIM IS PLAUSIBLY ALLEGED AGAINST NIGHT MEDIA, AND ITS ROLE IS A DISPUTED FACT. ..... 16
VII. DEFENDANTS CONVENED THE CROWD AND CONTROLLED THE LINE; NEGLIGENCE AND GROSS NEGLIGENCE ARE PLAUSIBLY

ALLEGED. .......... 17

VIII. KNOWING USE IS ALLEGED, AND THE STATUTE REQUIRES NOTHING MORE FOR EXEMPLARY DAMAGES. .......... 19

IX. THE ABSENCE OF A QUANTIFIED MONETARY LOSS IS NOT A GROUND FOR DISMISSAL. .......... 20

X. NEW YORK'S ANTI-SLAPP PROVISIONS DO NOT APPLY HERE. .......... 21

XI. WHAT DEFENDANTS' VIDEO IS FOR IS A QUESTION OF FACT THAT CANNOT BE RESOLVED ON THE PLEADINGS. .......... 21

XII. ALTERNATIVE RELIEF: RULE 12(d) AND LEAVE TO AMEND. .......... 22

CONCLUSION .......... 23

CERTIFICATE OF COMPLIANCE .......... 24

## TABLE OF AUTHORITIES

### Cases

*Adrian v. Unterman*, 281 App. Div. 81 (1st Dep't 1952), *aff'd*, 306 N.Y. 771 (1954) ... 16
*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) ... 17
*Arrington v. New York Times Co.*, 55 N.Y.2d 433 (1982) ... i, 9
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ... 5
*Basso v. Miller*, 40 N.Y.2d 233 (1976) ... i, 17
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ... i, 5
*Beverley v. Choices Women's Med. Ctr., Inc.*, 141 A.D.2d 89 (2d Dep't 1988), *aff'd*, 78 N.Y.2d 745 (1991) ... i, 8
*Blumenthal v. Picture Classics, Inc.*, 235 App. Div. 570 (1st Dep't 1932), *aff'd*, 261 N.Y. 504 (1933) ... 12
*Booth v. Curtis Publ'g Co.*, 15 A.D.2d 343 (1st Dep't 1962), *aff'd*, 11 N.Y.2d 907 (1962) ... 10, 11
*Brinkley v. Casablancas*, 80 A.D.2d 428 (1st Dep't 1981) ... 8
*Burck v. Mars, Inc.*, 571 F. Supp. 2d 446 (S.D.N.Y. 2008) ... 14
*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ... 5
*Cohen v. Herbal Concepts, Inc.*, 63 N.Y.2d 379 (1984) ... 14
*Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 81 N.Y.2d 821 (1993) ... 19
*Cuoco v. Moritsugu*, 222 F.3d 99 (2d Cir. 2000) ... ii, 22
*Doe v. Darien Lake Theme Park Camping Resort, Inc.*, 277 A.D.2d 967 (4th Dep't 2000) ... i, 22
*Dzurenko v. Jordache, Inc.*, 59 N.Y.2d 788 (1983) ... 15
*Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233 (2d Cir. 2021) ... 16, 20
*Erickson v. Pardus*, 551 U.S. 89 (2007) (per curiam) ... ii, 5
*Flores v. Mosler Safe Co.*, 7 N.Y.2d 276 (1959) ... 12
*Foman v. Davis*, 371 U.S. 178 (1962) ... 22
*Gautier v. Pro-Football, Inc.*, 304 N.Y. 354 (1952) ... i, 12
*Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794 (2d Cir. 1999) ... ii, 22
*Groden v. Random House, Inc.*, 61 F.3d 1045 (2d Cir. 1995) ... 9, 11
*Grodin v. Liberty Cable*, 244 A.D.2d 153 (1st Dep't 1997) ... 22
*Gronski v. County of Monroe*, 18 N.Y.3d 374 (2011) ... 17
*Hayden v. Paterson*, 594 F.3d 150 (2d Cir. 2010) ... 5, 16, 21
*Hoepker v. Kruger*, 200 F. Supp. 2d 340 (S.D.N.Y. 2002) ... 8

*Howell v. New York Post Co.*, 81 N.Y.2d 115 (1993) ... 9
*Khozissova v. Ralph Lauren Corp.*, 228 A.D.3d 508 (1st Dep't 2024) ... 1, 7, 9, 12
*La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020) ... 21
*Ladany v. William Morrow & Co.*, 465 F. Supp. 870 (S.D.N.Y. 1978) ... 10
*Lehrman v. Lovo, Inc.*, 790 F. Supp. 3d 348 (S.D.N.Y. 2025) ... 13, 14
*Lerman v. Flynt Distrib. Co.*, 745 F.2d 123 (2d Cir. 1984) ... 20
*Loftus v. Greenwich Lithographing Co.*, 192 App. Div. 251 (1st Dep't 1920) ... 14
*Lohan v. Perez*, 924 F. Supp. 2d 447 (E.D.N.Y. 2013) ... 6
*Lohan v. Take-Two Interactive Software, Inc.*, 31 N.Y.3d 111 (2018) ... i, 14
*Meeropol v. Nizer*, 381 F. Supp. 29 (S.D.N.Y. 1974) ... 10
*Messenger v. Gruner + Jahr Printing & Publ'g*, 94 N.Y.2d 436 (2000) ... i, 7
*Molina v. Phoenix Sound Inc.*, 297 A.D.2d 595 (1st Dep't 2002) ... 22
*Namath v. Sports Illustrated*, 48 A.D.2d 487 (1st Dep't 1975) ... 9
*Negri v. Schering Corp.*, 333 F. Supp. 101 (S.D.N.Y. 1971) ... 13, 15
*Preston v. Martin Bregman Prods., Inc.*, 765 F. Supp. 116 (S.D.N.Y. 1991) ... 10
*Shields v. Gross*, 58 N.Y.2d 338 (1983) ... 15
*Spiegel v. Schulmann*, 604 F.3d 72 (2d Cir. 2010) ... 16
*Stephano v. News Grp. Publ'ns, Inc.*, 64 N.Y.2d 174 (1984) ... 7, 15
*Stern v. Delphi Internet Servs. Corp.*, 165 Misc. 2d 21 (Sup. Ct. N.Y. Cnty. 1995) ... 11
*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471 (2d Cir. 2006) ... 5
*Univ. of Notre Dame du Lac v. Twentieth Century-Fox Film Corp.*, 22 A.D.2d 452 (1st Dep't 1965) ... 10
*Walker v. Schult*, 717 F.3d 119 (2d Cir. 2013) ... 5, 17
*Welch v. Mr. Christmas Inc.*, 57 N.Y.2d 143 (1982) ... 16, 19
*Wilson v. Veritas Consulting Grp. Inc.*, 2022 WL 4227145 (S.D.N.Y. Sept. 13, 2022) ... 14

**Statutes and Rules**

Fed. R. Civ. P. 8(d)(2) ... 17
Fed. R. Civ. P. 12(d) ... 22, 23
Fed. R. Civ. P. 15(a)(2) ... 22, 23
Fed. R. Evid. 107 ... iii
Fed. R. Evid. 201(b) ... ii, iii, 17
N.Y. C.P.L.R. 1411 ... 18
N.Y. C.P.L.R. 3211(g) ... 21
N.Y. Civil Rights Law § 50 ... passim
N.Y. Civil Rights Law § 51 ... passim

N.Y. Civil Rights Law §§ 70-a, 76-a ........ 21

**Other Authorities and Online Sources**

Kai Cenat, *STREAMER UNIVERSITY FINAL ASSEMBLY *Award Ceremony**, Twitch (May 25, 2025), twitch.tv/videos/2468531436 ........ cover

Streamer University website, streameruniversity.com ........ 2

ANSI/ISEA 107-2020, American National Standard for High-Visibility Safety Apparel ........ 14

AvA LIVE, *Head of Entertainment @ TikTok, Inside Streamer University With Kai Cenat's Manager + BTS of SNL* (July 30, 2026), podcasts.apple.com ........ 16

## PRELIMINARY STATEMENT

The question this motion presents is whether the incidental use doctrine bars a claim under New York Civil Rights Law §§ 50 and 51 where the defendant publicly advertised for the plaintiff's attendance at an event the defendant convened on premises it engaged and controlled, held the plaintiff's written application at the moment of filming, published conditions of entry that said nothing of recording, and used the resulting footage to open a video promoting the defendant's own program. Plaintiff has found no New York decision on it.

On June 11, 2026, Defendants publicly invited applicants: "Introducing Streamer University 2026 IN PERSON APPLICATIONS, come to my office and show me why you should be in SU'26." (FAC ¶¶ 18–21.) Plaintiff accepted that invitation. He traveled to the address, waited there for hours in the line Defendants summoned, and presented a written form to Kai Cenat, who stamped it "STAY IN TOUCH." (FAC ¶¶ 37–43.)

While he was there, Defendants filmed him, including an interview-style segment that has never been released. What they kept was his picture, in the opening shot of a video promoting the program. They obtained no written consent from him and never asked for any. (FAC ¶¶ 46, 77–78.)

The motion fails at the threshold because it asks this Court to decide, on the pleadings, what Defendants' own video is for. Plaintiff has alleged that the video is promotional, that its purpose is to display attendance and demand and to solicit applications to the program and sponsorship of it, and that his picture is in its opening shot. Those allegations control, and no contrary characterization is available to Defendants at this stage.

The authority Night Media presses hardest confirms the point. *Khozissova v. Ralph Lauren Corp.* affirmed dismissal because the plaintiff "fail[ed] to allege any facts" that a documentary, judged by its "content," was a disguised advertisement, and because her 38 seconds in a 108-minute film were incidental. 228 A.D.3d 508 (1st Dep't 2024). This work's content is an advertisement, and Plaintiff is in its opening shot.

The motion should be denied.

## STATEMENT OF ALLEGED FACTS

***The Venture.***

Defendants operate "Streamer University," a branded commercial venture that Defendants created, promote, and control. (FAC ¶ 11.) Defendant Kai Cenat LLC (Georgia) has applied to register "SU STREAMER UNIVERSITY" as a federal service mark, U.S. Serial No. 99391010, filed September 12, 2025; a Notice of Allowance issued May 5, 2026, as it did for a companion "SU" design mark. (*Id.*; Gottfried Decl. Exs. F, I.) The Venture accepts applications to its program through its website, streameruniversity.com. (FAC ¶ 15.)

***The solicitation.***

On June 11, 2026, Defendants publicly announced an in-person application event to be held the following day at 1:00 p.m. at a specified street address in Manhattan. (FAC ¶ 18.) The announcement was published on the verified accounts @kaicenat on Instagram and @KaiCenat on X, in these words: "Introducing Streamer University 2026 IN PERSON APPLICATIONS, come to my office and show me why you should be in SU'26." (FAC ¶¶ 18–20; Gottfried Decl. Ex. H.)

***The published conditions of attendance.***

Published with that announcement were the conditions on which attendees would be admitted: a minimum age of eighteen years; presentation of a valid government-issued photographic identification; and a clear-bag policy. (FAC ¶ 31.) Defendants separately published rules of conduct. (FAC ¶ 32.) None of them said anything about recording. (FAC ¶¶ 33–35.)

***Plaintiff's dealings with Defendants.***

On or about June 9, 2026 — three days before the event — Plaintiff submitted an online application to Defendants through streameruniversity.com. (FAC ¶¶ 37–39.) The first

step of that application contained no release of claims and no grant of rights in an applicant's name, portrait, picture, voice, or performance. (FAC ¶ 40; Gottfried Decl. Ex. K.) Plaintiff attended the June 12, 2026 event in reliance on Defendants' published announcement. (FAC ¶¶ 22–23, 28.) At the event he completed a form supplied by Defendants, titled "STREAMER UNIVERSITY — Admissions Dossier • Class of 2026," and presented it to Kai Cenat, who stamped it "STAY IN TOUCH" while Defendants' cameras were recording. (FAC ¶¶ 42–43; Gottfried Decl. Ex. C.) He was not accepted into the program. (FAC ¶ 45.)




Figure 3. Left: the blank form Defendants handed out. Right: Plaintiff's, stamped "STAY IN TOUCH" by Kai Cenat on Defendants' cameras, footage they must preserve. (Gottfried Decl. Exs. N, C; FAC ¶¶ 42–43.)

***The filming and the video.***

Defendants recorded Plaintiff at the event. (FAC ¶¶ 43, 46.) On June 20, 2026, Defendants published a video titled "Streamer University NEW YORK In Person Applications" on a channel operated by or for them. (FAC ¶ 76.) Its purpose is to display the demand the event drew, to promote the program, and to solicit applications and sponsorship. (FAC ¶ 84.) Plaintiff appears in it at approximately 00:00:01 to 00:00:03 — frames 40 through 96 of 50,369 — in the opening seconds. (FAC ¶¶ 77–78; Gottfried Decl. Ex. A.) His head and upper body are visible and his face is partially visible; he is identifiable by the combination of

his head, build, and posture, by a distinctive star-pattern hat, and by a high-visibility safety vest he has used as a recurring element of his visual presentation. (FAC ¶¶ 80–81; Gottfried Decl. Exs. A, E.) The video was published on a monetized channel, and a pre-roll advertisement played before it. (FAC ¶ 76.)



Figure 4. Left: the opening shot of Defendants' video, the crowd they summoned, and Plaintiff's enlargement of himself in it. Center: Plaintiff in TMZ's photograph the same day (detail). Right: the same style of vest in his March 2026 music video. (Gottfried Decl. Exs. A, E, O.)

***Consent.***

Plaintiff signed no release, waiver, or grant of rights. No person asked him to sign one. He was never paid. No Defendant has produced, identified, or described any writing by which he consented to any use of his name, portrait, picture, likeness, or voice. (FAC ¶¶ 87, 91.)

***The Venture's knowledge of the obligation.***

On May 16, 2025, thirteen months before the event, Kai Cenat LLC, operating as the Venture, agreed in writing with a public university that it was responsible for obtaining photo, video, and audio recording releases, including from nonparticipants, and that it owned all recordings. (FAC ¶¶ 69–72; Gottfried Decl. Ex. B at 9, 20.)

**<u>STANDARD OF REVIEW</u>**

A complaint survives a motion to dismiss if it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court accepts all factual allegations as true and draws all reasonable inferences in Plaintiff's favor. *Id.*; *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). The standard is the same under Rule 12(c). *Hayden*, 594 F.3d at 160.

The standard is the plausibility of the pleading, not opposing counsel's view of the case. Night Media has told the Court that Plaintiff's claims "have no legal merit" (ECF No. 91 at 2). That is a position, not a pleading standard; a well-pleaded complaint "may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted).

A pro se pleading is construed liberally and read to raise the strongest arguments it suggests. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

The Court may consider documents incorporated in the complaint by reference or integral to it, and matters subject to judicial notice. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). The accompanying Declaration of Caleb Gottfried ("Gottfried Decl.") attaches documents the Fourth Amended Complaint quotes or relies on, public records, and his own video. (Gottfried Decl. Exs. A–P.) They show what the pleading describes; any new fact is consistent with it and may be considered. *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013). This opposition depends on none of them.

## ARGUMENT

### I. PLAINTIFF WAS NOT A PASSERBY: DEFENDANTS SOLICITED HIS ATTENDANCE, ON PREMISES THEY CONTROLLED, TO TRANSACT WITH THEM.

#### A. Plaintiff attended because Defendants advertised for his attendance.

Defendants publicly invited applicants to a stated address at a stated hour: "come to my office and show me why you should be in SU'26." (FAC ¶¶ 18–19.)

First, the gathering was not an occurrence at which persons happened to be present. It was an application process — in Defendants' own words, "IN PERSON APPLICATIONS." (FAC ¶¶ 19–20.) Every person who attended did so to transact with Defendants.

Second, Defendants solicited the very attendance they then filmed. The crowd was not encountered. It was produced, by advertisement, for Defendants' benefit. A party may not advertise to assemble a crowd, assemble it on premises it controls, film it, and then invoke a doctrine constructed for people who happened to be walking by.

**B. Plaintiff stood in a pre-existing transactional relationship with Defendants when they filmed him.**

Plaintiff had submitted an online application to Defendants on or about June 9, 2026, three days before the event, through the website Defendants operate. (FAC ¶¶ 37–41.) He attended on June 12 in continuation of that application. (FAC ¶¶ 22–23, 28.) He completed and submitted a further written application at the event, on a form of Defendants' own design, which Kai Cenat stamped "STAY IN TOUCH." (FAC ¶¶ 42–43; Gottfried Decl. Ex. L.)

This matters because of the doctrine's own stated rationale. Courts decline to impose liability for fleeting appearances in expressive works "because of the danger of imposing an uncalled-for burden and hazard on publishers." *Lohan v. Perez*, 924 F. Supp. 2d 447, 455 (E.D.N.Y. 2013). Whatever burden it would impose on a film crew to identify and clear a stranger on a public street, no comparable burden existed here. Defendants were already collecting each attendee's particulars in writing, on their own form, as a condition of the very transaction that brought the attendee to the room. Adding a line to that form would have cost them nothing. The rationale that supports the doctrine is absent, and a doctrine does not extend past its reason.

**C. The rule the Court may state, and why it decides this case without unsettling any other.**

Plaintiff does not ask this Court to abolish the incidental use doctrine, to limit it by duration, or to disturb a single reported decision. He asks the Court to state the limit the doctrine already contains.

Incidental use asks whether a person's appearance bears a substantial relation to the subject of the work in which it appears. Where the subject of the work is the defendant's own venture, and the defendant solicited the plaintiff's attendance at the occasion the work depicts, the appearance bears a relation to the subject by construction, and the doctrine's premise is absent.

It is also a rule a defendant can comply with at no cost. Defendants had attendees complete a written form of Defendants' own design. (FAC ¶ 42.) It asked, "What makes you memorable on camera?" and "What is one thing about you that viewers would never guess?" It never asked for consent to be filmed. (Gottfried Decl. Exs. C, N.) One additional line on that form would have placed this case outside the statute entirely.

## II. THE NEWSWORTHINESS EXEMPTION DOES NOT REACH AN ADVERTISEMENT FOR A PAID PROGRAM.

Sections 50 and 51 do not reach the reporting of newsworthy events or the discussion of matters of public interest. *Messenger v. Gruner + Jahr Printing & Publ'g*, 94 N.Y.2d 436, 441–42 (2000). The exemption exists so that the statute does not collide with the First Amendment. It protects works that inform. It does not protect works that sell.

### A. Content controls, and the content of this work is promotional.

The measure is the content of the work. *Stephano v. News Grp. Publ'ns, Inc.*, 64 N.Y.2d 174, 184–85 (1984); *Khozissova*, 228 A.D.3d 508 ("it is the 'content' of the work, rather than a defendant's profit from it, that bears on whether 'a newsworthy [use], as opposed to a trade usage' is at issue").

The Court of Appeals has said as much directly. After setting out the newsworthiness rule, it added that "a Civil Rights Law claim may lie if a plaintiff's picture is used purely for trade purposes, and not in connection with a newsworthy article." *Messenger*, 94 N.Y.2d at

444 (citing *Brinkley v. Casablancas*, 80 A.D.2d 428 (1st Dep't 1981)). That is this case. There is no article, no report, and no newsworthy work that Plaintiff's picture illustrates.

The content here is an advertisement. The video depicts an admissions event for a commercial program, displays the crowd that attended it, and promotes the program. (FAC ¶¶ 83–84.) It recounts no event for an audience seeking information. It advances no idea. It examines no person's life, work, or career. It has no narrative, no argument, and no subject other than the Venture itself.

**B. A commercial actor may not borrow the public interest.**

Where a commercial enterprise seeks shelter in the newsworthiness of its subject, the Court of Appeals has supplied the answer. In Beverley v. Choices Women's Medical Center, Inc., a for- profit medical center distributed a promotional calendar celebrating the history of the women's movement, using the plaintiff's photograph without consent. 78 N.Y.2d 745 (1991). The subject was indisputably of public interest. The use was nonetheless actionable, because a commercial actor may not "unilaterally neutralize or override the long-standing and significant statutory privacy protection by wrapping its advertising message in the cloak of public interest, however commendable the educational and informational value." *Id.* at 752.

So here. Whatever public interest may attach to the Venture or to its principal, this video is the Venture's advertisement for itself, and Defendants may not borrow the interest of the subject to immunize the sale of the product.

The incidental use exception, which New York courts have also called the ancillary use exception, is bounded by the thing it exists to protect. As Judge Hellerstein put it, "[w]hile the privacy laws prohibit nonconsensual use of a person's image for advertising purposes, advertising that is undertaken in connection with a use protected by the First Amendment falls outside the statute's reach." *Hoepker v. Kruger*, 200 F. Supp. 2d 340, 350 & n.16 (S.D.N.Y. 2002). Every decision in the line bears that structure: an advertisement for a book, a magazine, a newspaper article, or a museum exhibition — a protected work whose privilege the

advertisement inherits. See *id.* at 351 (collecting *Groden v. Random House, Inc.*, 61 F.3d 1045 (2d Cir. 1995), *Namath v. Sports Illustrated*, 48 A.D.2d 487 (1st Dep't 1975), and Booth).

The exception therefore requires a protected underlying use, and Defendants have none to point to. The video does not advertise a book, a documentary, a broadcast, an exhibition, or any other work of expression. It advertises admission to the program the Venture operates. There is no privileged publication from which this advertisement could borrow a privilege, which is the distinction Booth drew and the distinction on which Hoepker turned.

### C. Arrington forecloses the argument at the pleading stage.

Even where a work is presumptively protected, the exemption does not apply if the work is "an advertisement in disguise." *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 440 (1982). Khozissova confirms that the inquiry remains available; the plaintiff there lost it because she "fail[ed] to allege any facts" to support it. *Khozissova*, 228 A.D.3d 508. Plaintiff has alleged such facts. (FAC ¶¶ 83–86.)

Plaintiff acknowledges that where a defendant invokes the newsworthiness exemption, the plaintiff bears the burden of showing that the use bore no real relationship to a matter of public interest or that the work is an advertisement in disguise. *Howell v. New York Post Co.*, 81 N.Y.2d 115, 123–24 (1993). He accepts that burden and has carried it at this stage by pleading facts: that the work solicits applications to the program, that it was published on a monetized channel, that it displays attendance to demonstrate demand, and that it reports no event and examines no subject. (FAC ¶¶ 76, 83–84, 86.)

Plaintiff does not, however, require the "disguise" framing. The work here is not a protected work wearing advertising clothes. It is an advertisement, and it has never been anything else.

## III. THE INCIDENTAL USE DOCTRINE DOES NOT REACH A COMMERCIAL PROMOTER'S ADVERTISEMENT FOR ITS OWN PAID PROGRAM.

### A. The doctrine measures contribution to a work's purpose, not duration.

The incidental use doctrine does not hold that brief appearances are lawful. It asks what a person's image contributes to the work in which it appears. In Preston v. Martin Bregman Productions, Inc., the court granted summary judgment because the plaintiff's appearance "contributes nothing of significance to the movie's story line." 765 F. Supp. 116, 119 (S.D.N.Y. 1991). The authorities on which Preston relied apply the same measure — pages of a book, minutes of a broadcast, references within a narrative. *Id.* at 119–20 (citing *Ladany v. William Morrow & Co.*, 465 F. Supp. 870 (S.D.N.Y. 1978); *Univ. of Notre Dame du Lac v. Twentieth Century-Fox Film Corp.*, 22 A.D.2d 452 (1st Dep't 1965); *Meeropol v. Nizer*, 381 F. Supp. 29 (S.D.N.Y. 1974)).

**B. Booth marks the boundary, and Defendants fall outside it.**

A trailer or promotional piece may itself be protected, and the reason is Booth v. Curtis Publishing Co., 15 A.D.2d 343 (1st Dep't 1962), *aff'd*, 11 N.Y.2d 907 (1962). Booth permits a publisher to republish protected content in advertising the publication itself — "incidental advertising related to the sale and dissemination of the news medium itself" — while leaving "collateral advertising" within the statute's reach. *Id.* at 348–49. The Khozissova trailer advertised a documentary; the advertisement inherited the privilege of the expressive work it advertised.

This video advertises no expressive work. It advertises a commercial program and solicits sponsorship of it. (FAC ¶ 84.) There is no privileged underlying publication whose privilege it could inherit. Under Booth this is collateral advertising, and collateral advertising is what Sections 50 and 51 were enacted to reach.

**C. The Second Circuit has stated what drives the exception, and it is not present here.**

The question whether the incidental use doctrine reaches this video need not be answered by analogy, because the courts have stated the doctrine's rationale in terms. The Second Circuit, quoting the New York Supreme Court with approval, put it this way: "It is clear that what drives the 'incidental use' exception is the First Amendment interest in

protecting the ability of news disseminators to publicize, to make public, their own communications." *Groden*, 61 F.3d at 1050–51 (quoting *Stern v. Delphi Internet Servs. Corp.*, 626 N.Y.S.2d 694, 700 (Sup. Ct. N.Y. Cnty. 1995)).

Read against that statement of purpose, Defendants are not within the doctrine on any reading. They are not news disseminators. The video is not a communication they are publicizing. It is a solicitation for admission to a program they sell. There is no communication standing behind this advertisement whose publicity the advertisement serves.

The Second Circuit described the exception in the same opinion as covering "the 'incidental' use in ads or other promotional items of material that 'prove[s] [the] worth and illustrates [the] content' of the works being advertised." *Id.* at 1049 (quoting *Booth*, 15 A.D.2d at 349). Every term of that formulation presupposes a work. The advertised thing must be a work whose content the borrowed material illustrates. Admission to a commercial program is not a work and has no content for Plaintiff's picture to illustrate.

**D. The Venture's operator treated releases as required, and said so in writing.**

In a facility agreement executed May 16, 2025, the Venture agreed that it "is responsible for obtaining any necessary releases associated with USER's use of facility, including, but not limited to, photo, video, and audio recording releases." (FAC ¶ 70; Gottfried Decl. Ex. B at 9.) At Exhibit D to that agreement the Venture undertook that "Producer will obtain any necessary releases from nonparticipants as necessary under any legal requirements," and asserted that "Producer is the sole owner of the Program and all photographs and recordings made pursuant to this Agreement." (FAC ¶¶ 71–72; Gottfried Decl. Ex. B at 20.)

## IV. IN THE ALTERNATIVE, PLAINTIFF'S IMAGE BEARS PARTICULAR SIGNIFICANCE TO THE MAIN PURPOSE OF THE WORK.

Should the Court conclude that the incidental use doctrine reaches advertisements, the motion still fails, because Plaintiff satisfies the standard the First Department applied. The Khozissova plaintiff's claim failed because she "does not allege facts to otherwise show that

the use of her image bore particular significance to the main purpose of the film." *Khozissova*, 228 A.D.3d 508. That is the test. Plaintiff has alleged such facts, and on this motion they are taken as true.

The main purpose of a promotional video for an admissions event is to show that the event drew people and that the program merits application. Plaintiff's image is not adjacent to that purpose; it serves it. He is among the attendees whose presence constitutes the demand the video exists to display. In an advertisement built upon the appearance of demand, the attendees are not background to the product. They are what is being shown.

Placement confirms it. The opening frames of a promotional video are its most deliberate choice — the frames selected to hold a viewer who has not yet decided to keep watching. A person shown there has not been caught in the background of something else. Compare *Gautier v. Pro-Football, Inc.*, 304 N.Y. 354, 360 (1952).

The Court of Appeals drew this line in Gautier: a spectator "may be taken as part of the general audience, but may not be picked out of a crowd alone, thrust upon the screen and unduly featured for public view." 304 N.Y. at 360. Gautier cited *Blumenthal v. Picture Classics, Inc.*, 235 App. Div. 570 (1st Dep't 1932), *aff'd*, 261 N.Y. 504 (1933), where a close-up of a street vendor lasting about six seconds of a city film was actionable because it "was a front view closeup of her and was intended to show her alone." *Id.* at 570–71. Duration alone has never been the measure, and presence in a public place is not an answer to the statute.

Plaintiff was placed in the opening frames, the frames chosen to hold a viewer. (FAC ¶¶ 77–79; Gottfried Decl. Ex. A.)

And the frames were chosen. Defendants placed cameras at their own event, recorded Plaintiff, edited the footage, and selected what would open the video. (FAC ¶¶ 79, 85.) They could have omitted him and did not. See *Flores v. Mosler Safe Co.*, 7 N.Y.2d 276, 284–85 (1959) (affirming denial of a motion to dismiss where the defendant "freely and deliberately chose to adopt and reprint" material containing the plaintiff's name, and could have cut it out).

More than that: Defendants filmed an interview-style segment with Plaintiff and have never released it, while the body of the video consists of interview segments and other recorded material. (FAC ¶¶ 46, 78.) What Defendants used was his picture, at the front.

The doctrine presupposes a defendant who swept up a bystander while recording something else. A defendant who recorded the same person more than once, kept the footage that displayed his image, and set aside the footage that gave him a voice has attended to him. A chosen frame is not an incidental one.

The pleading does not ask the Court to infer selection from editing alone. It alleges an unreleased interview-style segment, a video whose body is interview material, and Plaintiff's image alone placed before all of it. (FAC ¶¶ 46, 78–79, 85.) Whether that reflects an editorial judgment about what the advertisement needed is a question of fact that the raw footage — in Defendants' exclusive possession — will answer.

*Negri v. Schering Corp.* answers the premise of Defendants' argument. The defendant there urged that the plaintiff's "identity is irrelevant to what the advertisement is trying to sell." Judge Bryan held the theory "unsupported by either authority or reason," and found the photograph "far from being incidental to what the advertisement was trying to sell." 333 F. Supp. 101, 106 (S.D.N.Y. 1971). Here Plaintiff's picture is in the opening shot of an advertisement for the very program Defendants sell.

At the very least, whether an appearance bears particular significance to a work's main purpose cannot be determined without knowing what that purpose is — and Plaintiff has pleaded it.

**V. EACH STATUTORY ELEMENT IS PLAUSIBLY ALLEGED.**

A claim under Sections 50 and 51 requires "(i) usage of plaintiff's name, portrait, picture, or voice, (ii) within the state of New York, (iii) for purposes of advertising or trade, (iv) without plaintiff's written consent." *Lehrman v. Lovo, Inc.*, 790 F. Supp. 3d 348, 379

(S.D.N.Y. 2025) (quoting *Wilson v. Veritas Consulting Grp. Inc.*, No. 21-CV-8318, 2022 WL 4227145, at *2 (S.D.N.Y. Sept. 13, 2022)).

**A. Usage and identifiability.**

Identifiability does not depend upon a visible face. "The statute is designed to protect a person's identity, not merely a property interest in his or her 'name', 'portrait' or 'picture.'" *Cohen v. Herbal Concepts, Inc.*, 63 N.Y.2d 379, 384 (1984). As Judge Oetken put the point last year, "[w]hat matters is not whether, for example, a face is seen in a particular picture, but rather 'the quality and quantity of the identifiable characteristics displayed,' and whether they suffice to permit recognition of the plaintiff's identity." *Lehrman*, 790 F. Supp. 3d at 381 (quoting *Cohen*, 63 N.Y.2d at 384). "[A]ny recognizable likeness . . . may qualify as a 'portrait or picture.'" *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 451 (S.D.N.Y. 2008).

Plaintiff has alleged that his head, build, and posture are visible and his face partially visible; that he wears a distinctive star-pattern hat visible in the video; that a high-visibility safety vest he has used as a recurring element of his visual presentation is visible with him; and that his presence at the event, wearing that vest, was separately documented and published by third-party press media the same day. (FAC ¶¶ 80–82; Gottfried Decl. Exs. A, E.) Night Media says no one is recognizable. (ECF No. 95 at 12–13.) Plaintiff wore a high-visibility vest: apparel "intended to provide conspicuity to the user." ANSI/ISEA 107-2020. Night Media's Exhibit A is a different shot from the frames in which Plaintiff appears. (ECF No. 94-1 ¶ 4.) Plaintiff's Exhibit A shows the frames in which he does. (FAC ¶ 77.) Identifiability is ordinarily a question of fact. *Cohen*, 63 N.Y.2d at 384–85; accord *Lohan v. Take-Two Interactive Software, Inc.*, 31 N.Y.3d 111, 122 (2018) ("Whether an image or avatar is a 'portrait' because it presents a 'recognizable likeness' typically is a question for a trier of fact.").

Distinctive dress has sufficed for a century. In *Loftus v. Greenwich Lithographing Co.*, the First Department held a plaintiff identifiable where she "would be readily recognized from

the photograph and particularly from the costume and pose even though there were … a slight change in the outline of the features." 192 App. Div. 251, 253 (1st Dep't 1920). A star-pattern hat and a high-visibility vest associated with Plaintiff's own commercial work are the costume in this case.

And the test is capability of recognition, not a headcount. "On that issue the question is whether the figure is recognizable, not the number of people who recognized it." *Negri*, 333 F. Supp. at 104. Negri reached that conclusion citing Loftus, and rejected the contention that changes in a subject's appearance defeat the claim: "If a picture so used is a clear and identifiable likeness of a living person, he or she is entitled to recover damages suffered by reason of such use, whether or not his or her appearance has altered through the passage of time." *Id.* at 105.

The second and third elements are not seriously contestable on this pleading. The use occurred within New York: Defendants convened the event in Manhattan, recorded Plaintiff there, and published the video. (FAC ¶¶ 16, 76, 99.) And the use was for advertising or trade purposes: Plaintiff alleges that the video promotes the Venture, solicits applications to the program, and was published on a monetized channel carrying advertising, and that it solicits sponsorship of the program. (FAC ¶¶ 76, 83–84.) Whether a use is for advertising or trade purposes is in any event ordinarily a question of fact. *Stephano*, 64 N.Y.2d at 184.

**B. Absence of written consent.**

Section 50 requires written consent "first obtained." The statute recognizes no other form. Notice is not consent. Conduct is not consent. A term an attendee might have encountered somewhere is not consent. And consent must run to the particular defendant and must cover the particular use. *Dzurenko v. Jordache, Inc.*, 59 N.Y.2d 788, 790 (1983) ("a defendant's immunity from a claim for invasion of privacy is no broader than the consent executed to him"; "[w]hether the limitation in the consent is as to time, form or forum, the use of a name, portrait or picture is without consent if it exceeds the limitation") (quoting *Shields*

*v. Gross*, 58 N.Y.2d 338, 347 (1983)); accord *Spiegel v. Schulmann*, 604 F.3d 72, 77 (2d Cir. 2010); *Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 250–52 (2d Cir. 2021).

The First Department has foreclosed the substitutes Defendants might offer in place of a writing. In *Adrian v. Unterman*, the court held: "Estoppel is insufficient as a defense to such a cause of action, in view of the express statutory requirement of written consent." 281 App. Div. 81, 88 (1st Dep't 1952), *aff'd*, 306 N.Y. 771 (1954). The same decision holds that rights under the statute "are not forfeited by a limited consent when the name is used after the consent expired." *Id.* at 89, cited in *Welch v. Mr. Christmas Inc.*, 57 N.Y.2d 143, 148 (1982). A fortiori, rights are not forfeited where no consent was ever given at all.

Plaintiff has alleged that he signed nothing, was asked for nothing, and was paid nothing; that no release appears in the online application or in the privacy policy; that the published conditions of entry contained no recording term and referred to no document containing one; and that no Defendant has produced, identified, or described any writing. (FAC ¶¶ 33–35, 40, 87–91; Gottfried Decl. Exs. C, D.)

## VI. THE CLAIM IS PLAUSIBLY ALLEGED AGAINST NIGHT MEDIA, AND ITS ROLE IS A DISPUTED FACT.

Night Media's role is a disputed fact. The Fourth Amended Complaint alleges it; its co-defendants and its own words confirm the dispute; and a disputed fact cannot be resolved on the pleadings.

Plaintiff has alleged that Defendants jointly operated the Venture, conducted the June 12, 2026 event, recorded him, and published the video. (FAC ¶¶ 11, 13–14, 17, 76.) A denial is not a basis for judgment; the pleading controls. *Hayden*, 594 F.3d at 160. Kai Cenat said of the Venture: "We own the IP of Streamer University." (FAC ¶ 12; Gottfried Decl. Ex. G.) Night Media's CEO said of the Venture: "we're trying to quantify how many impressions happened across TikTok." (AvA LIVE, July 30, 2026, at 24:44.) Who "we" includes is a question for discovery.

***Night Media in particular.*** The Fourth Amended Complaint pleads in the alternative, as Rule 8(d)(2) expressly permits, because the allocation of roles among Defendants is information within their exclusive possession. (FAC ¶¶ 10, 14.) That is not improper group pleading: a plaintiff may plead facts "peculiarly within the possession and control of the defendant," or where "the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citation omitted). Both apply here. Night Media's own co-defendants confirm that the question is genuinely disputed: in their November 19, 2026 Answer, the Kai Cenat Defendants allege "contractual agreement(s) in effect between the answering defendant and codefendant regarding the subject event." (ECF No. 86, Crossclaims.) The Court may notice that filing for its existence, not its truth. Fed. R. Evid. 201(b). Because Plaintiff is pro se, the Court may also consider consistent facts in this opposition. *Walker*, 717 F.3d at 122 n.1. Those facts include the crossclaim, Night Media's description of its role as "background support" at the November 5, 2026 conference (ECF No. 79; not denied in ECF No. 80), which Plaintiff offers not as an admission of liability but to show that the role is disputed, and Plaintiff's June 21, 2026 written notice to Night Media (FAC ¶ 92). Whether Night Media organized, financed, staffed, published, or profited from any part of the event or the video under those agreements is a question of fact that cannot be resolved against Plaintiff on a motion to dismiss.

## VII. DEFENDANTS CONVENED THE CROWD AND CONTROLLED THE LINE; NEGLIGENCE AND GROSS NEGLIGENCE ARE PLAUSIBLY ALLEGED.

***Duty.*** One who controls property must act "as a reasonable man in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." *Basso v. Miller*, 40 N.Y.2d 233, 241 (1976) (quotation omitted). That duty "is premised on the landowner's exercise of control over the property." *Gronski v. County of Monroe*, 18 N.Y.3d 374, 379 (2011). Defendants did not encounter Plaintiff by chance. They publicly invited the crowd to a specified address at a specified hour, assembled it on premises they had

engaged and controlled, and organized, promoted, staffed, and directed the event. (FAC ¶¶ 16–18, 30, 106; Gottfried Decl. Ex. M.) The extent of that control is a question of fact for discovery, not a ground for dismissal.

***Breach and foreseeability.*** Plaintiff waited outdoors for approximately ten hours, in heat reaching a heat index of about ninety degrees, with no medical staffing, triage, crowd-control system, or adequate hydration provided. (FAC ¶¶ 52–53, 66–67.) Defendants had prior experience of a crowd summoned the same way exceeding the space, and by about 4:00 a.m. knew this crowd had been assembling since the night before. (FAC ¶¶ 59–65.) Later that day, Kai Cenat stated on a broadcast that the building was requiring him to leave. (FAC ¶ 68.) Those facts plausibly allege breach and foreseeability. **Causation.** The harm is the kind those conditions cause: after hours in that heat without adequate hydration or medical care, Plaintiff twice came close to losing consciousness, and his treating physicians diagnosed pre-syncope and heat exhaustion. (FAC ¶¶ 54, 58.) That Plaintiff returned to the line goes to comparative fault, which does not bar recovery. N.Y. C.P.L.R. 1411.



Figure 5. Outside the venue, 1:21 p.m., after Kai Cenat arrived. Entry began about 1:40 p.m. or later, 40+ minutes late. (Gottfried Decl. Ex. J.)

***Gross negligence.*** Knowing the crowd had been assembling outdoors since the night before, and providing that crowd no medical staffing, triage, hydration, or crowd management

for about fifteen hours, plausibly alleges "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 81 N.Y.2d 821, 823–24 (1993) (quotation omitted). (FAC ¶¶ 111–113.) The bar is met because this was no momentary lapse: Defendants knew of the risk for hours, controlled the line, and took none of those basic precautions.

***As to Night Media.*** Night Media denies controlling the event, but its co-defendants allege event contracts with it (ECF No. 86). Which Defendant controlled the premises and the line is the same allocation-of-roles question addressed in Point VI, and cannot be resolved on the pleadings.

## VIII. KNOWING USE IS ALLEGED, AND THE STATUTE REQUIRES NOTHING MORE FOR EXEMPLARY DAMAGES.

Section 51 provides that where a defendant "shall have knowingly used" the plaintiff's name, portrait, picture, likeness, or voice in the manner forbidden, the jury "may, in its discretion, award exemplary damages." N.Y. Civ. Rights Law § 51.

Plaintiff has pleaded knowledge, and the allegation rests upon an executed writing. Thirteen months before the event, Kai Cenat LLC, operating as the Venture, agreed in writing that obtaining photographic, video, and audio recording releases was its responsibility, and specifically undertook to obtain releases "from nonparticipants." (FAC ¶¶ 69–73.) Defendants thereafter advertised the June 12, 2026 event, published conditions of entry that said nothing of recording, filmed the attendees those conditions admitted, and published Plaintiff's picture — without seeking any release from him. (FAC ¶¶ 18, 33–35, 74, 77.)

The Court of Appeals has settled the standard, and it is a low one. In *Welch v. Mr. Christmas Inc.*, the Court held: "Knowledge is not an element of the cause of action created by section 51 of the Civil Rights Law for compensatory damages and injunctive relief." 57 N.Y.2d 143, 145 (1982). As to exemplary damages, the Court was equally direct: "Neither malice nor recklessness need be shown," and "[f]or recovery of exemplary damages under the statute, therefore, no more need be shown than knowing use." *Id.* at 145, 150. The Court

affirmed an award of $15,000 in exemplary damages upon $1,000 in compensatory damages. *Id.* at 147, 151.

Knowledge is no part of the claim for compensatory damages or an injunction, and exemplary damages require no malice — only a knowing use. And Plaintiff has pleaded that Defendants knowingly recorded attendees at their own event, knowingly selected footage from what they recorded, and knowingly published it, with the Venture having agreed in writing thirteen months earlier that obtaining releases from nonparticipants was its own responsibility. (FAC ¶¶ 43, 69–73, 79, 85, 101.) As to Night Media, its co-defendants allege "contractual agreement(s)" with it "regarding the subject event" (ECF No. 86); what those agreements say about releases is a question for discovery.

Whether that conduct was knowing within the meaning of Section 51 is a question for the factfinder. It cannot be resolved against Plaintiff on a motion requiring every inference to be drawn in his favor.

## IX. THE ABSENCE OF A QUANTIFIED MONETARY LOSS IS NOT A GROUND FOR DISMISSAL.

To the extent Defendants contend that Plaintiff has not alleged damages with sufficient precision, the contention misstates the remedy Section 51 provides.

First, Section 51 authorizes an injunction, and a claim for injunctive relief stands independent of any damages showing. In Electra, the Second Circuit held that even where the plaintiffs' damages expert had been struck in its entirety, "Appellants can proceed at a minimum with their action to seek a permanent injunction." 987 F.3d at 255. Plaintiff seeks injunctive relief here. (FAC, Prayer for Relief.)

Second, the statute does not require proof of pecuniary loss. Damages under Section 51 "often are only nominal since they are designed primarily to compensate for injury to feelings." *Id.* (quoting *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 141 (2d Cir. 1984)). The Second Circuit put the point plainly: "Nominal damages are damages nonetheless." *Id.*

Third, fair market value remains available. Electra holds that "recovery of the fair market value of the images is a viable damages theory" where the defendant secured no legal right to the use. *Id.* Defendants secured none here. Plaintiff has further alleged that he performs and publishes commercially under a federally registered mark, and that his name, portrait, picture, and likeness have commercial value to him. (FAC ¶¶ 102–103; Gottfried Decl. Ex. P.)

## X. NEW YORK'S ANTI-SLAPP PROVISIONS DO NOT APPLY HERE.

To the extent Defendants invoke New York's anti-SLAPP statute, N.Y. C.P.L.R. 3211(g) and N.Y. Civil Rights Law §§ 70-a and 76-a, and seek fees or the application of a heightened standard, the request should be denied.

The Second Circuit has held that a state special motion to strike does not apply in federal court because its heightened standard and evidentiary requirements conflict with Federal Rules 12 and 56. *La Liberte v. Reid*, 966 F.3d 79, 86–88 (2d Cir. 2020). The same reasoning should govern New York's heightened standard, which imposes the kind of threshold showing that Rules 12 and 56 already address.

In any event, the predicate is absent. Sections 70-a and 76-a reach actions involving public petition and participation. This action concerns a commercial venture's unconsented use of an attendee's picture in an advertisement for its own commercial program. It is not a suit brought to chill Defendants' speech on a public issue, and Plaintiff seeks no relief directed at Defendants' expression on any matter of public concern.

## XI. WHAT DEFENDANTS' VIDEO IS FOR IS A QUESTION OF FACT THAT CANNOT BE RESOLVED ON THE PLEADINGS.

Night Media's motion asks the Court to decide what the video is for. That is a question of purpose, and Plaintiff has pleaded the answer. On this motion the Court accepts it. *Hayden*, 594 F.3d at 160.

The First Department has itself held the question to be one of fact. In *Grodin v. Liberty Cable*, it affirmed the denial of summary judgment, holding that "whether the reuse of plaintiff's likeness was too incidental to afford any viable breach of privacy claims … [is an] issue[] of fact." 244 A.D.2d 153, 153 (1st Dep't 1997). The First Department said the same five years later in *Molina v. Phoenix Sound Inc.*, listing "whether plaintiff's image on the Web site was an incidental use" among "a multitude of triable issues of fact" that precluded summary disposition. 297 A.D.2d 595, 598 (1st Dep't 2002).

The Fourth Department agrees. On facts close to these — a defendant's own advertising brochures and website — it affirmed the denial of a motion to dismiss, holding that "the applicability of the exception is an issue of fact for the jury." *Doe v. Darien Lake Theme Park Camping Resort, Inc.*, 277 A.D.2d 967, 967 (4th Dep't 2000). The court recognized that a "fleeting and incidental" use is not actionable, and still held that this "assessment must be made by a jury." *Id.* (citation omitted).

## XII. ALTERNATIVE RELIEF: RULE 12(d) AND LEAVE TO AMEND.

***First.*** If the Court considers matters outside the pleadings, Rule 12(d) requires that the motion be treated as one for summary judgment, with notice and a reasonable opportunity to present pertinent material. Plaintiff requests that notice.

***Second.*** If the Court concludes that any allegation is insufficiently pleaded, Plaintiff respectfully requests leave to replead under Fed. R. Civ. P. 15(a)(2). An amended pleading would add facts that have arisen since the Fourth Amended Complaint was filed, including those set out in Point VI. "[T]he court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Plaintiff's earlier amendments were made as of right, by consent, or with leave, to add

a party identified from public records and to add a claim; none followed a ruling that any claim was deficient. This motion is the first test of the pleading.

***Third.*** Plaintiff respectfully requests oral argument on the motion, and will appear as the Court directs.

## CONCLUSION

Defendants advertised for a crowd, assembled it on premises they engaged and controlled, filmed it, and promoted their program with the footage. They published the conditions on which they would admit attendees and did not include among them the one condition on which their entire defense now depends. The Venture had agreed in writing, thirteen months earlier, that obtaining releases from nonparticipants was its responsibility. Defendants obtained none from Plaintiff and never asked. One line on their own form would have been enough. They never wrote it.

For these reasons, Night Media's motion should be denied. In the alternative, Plaintiff respectfully requests the procedure Rule 12(d) requires or leave to amend under Fed. R. Civ. P. 15(a)(2).

Dated: New Jersey
November 25, 2026

/s/ Caleb Gottfried
Caleb Gottfried
Plaintiff pro se
5504 13th Ave, Unit #330
Brooklyn, New York 11219 (mailing address only)
(363) 888-6743
snvrk@snvrkotics.com

**CERTIFICATE OF COMPLIANCE**

**(S.D.N.Y. Local Civil Rule 7.1)**

I, Caleb Gottfried, plaintiff pro se, certify that this memorandum of law complies with the word-count limitation of S.D.N.Y. Local Civil Rule 7.1. Exclusive of the caption, table of contents, table of authorities, signature block, certificates, and declarations, this memorandum contains 8,739 words, as counted by the word-processing system used to prepare it. The memorandum is set in Times New Roman 12-point type, is double-spaced except for headings, block quotations, tables, figures and their captions, and the opening pages (i–iv), which are single-spaced, and has margins of one inch on all sides.

Executed on: November 25, 2026
/s/ Caleb Gottfried
Caleb Gottfried, Plaintiff pro se

**DECLARATION PURSUANT TO INDIVIDUAL RULE 8**

**(Use of Generative Artificial Intelligence)**

I, Caleb Gottfried, plaintiff pro se, declare under penalty of perjury:

1. In preparing the accompanying memorandum of law, I used a generative artificial intelligence tool as a drafting and research aid.

2. I personally reviewed every sentence of the memorandum before submitting it.

3. I personally verified the existence, text, holding, and current validity of every judicial decision, statute, and rule cited in the memorandum, and I read each cited decision.

4. Every factual statement in the memorandum is drawn from the pleadings and the exhibits identified, and I believe each to be true.

5. I take full personal responsibility for its contents.

Executed on: November 25, 2026
/s/ Caleb Gottfried
Caleb Gottfried, Plaintiff pro se